**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTERONE ACETATE) PRODUCTS LIABILITY LITIGATION | MDL No. 3140 |

**RESPONSE IN OPPOSITION BY GREENSTONE LLC AND VIATRIS INC.
TO PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN
DISTRICT OF CALIFORNIA PURSUANT TO 28 USC § 1407 FOR COORDINATED
OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to the Panel's Notice of Filing and Publication of Briefing Schedule, J.P.M.L. Dkt. No. 6, and Rules 3.2 and 6.2 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Greenstone LLC ("Greenstone") and Viatris Inc. ("Viatris") submit this Response in Opposition to Plaintiffs' Motion for Transfer of Action to the Northern District of California Pursuant to 28 USC § 1407 for Coordinated or Consolidated Pretrial Proceedings.[1] *See* J.P.M.L. Dkt. No. 1, Pls.' Mot. (the "Motion to Transfer"); J.P.M.L. Dkt. No. 1-1, Pls.' Br. in Supp. of Mot. (the "Brief in Support of Transfer").

## I.   INTRODUCTION

Plaintiffs have petitioned the Panel for MDL consolidation in the Northern District of California—a venue thousands of miles from Defendants' headquarters and the primary offices of most of the parties' attorneys. Indeed, transfer to either the Northern District of California would drastically reduce any efficiencies that could be gained from MDL coordination.[2] This prejudice

---

[1] In appearing before the Panel, Greenstone and Viatris do not waive—and hereby expressly reserve—all available defenses including, but not limited to, lack of personal jurisdiction and lack of proper service of process. *In re Library Editions of Children's Books*, 299 F. Supp. 1139, 1142 (J.P.M.L. 1969).

[2] It is notable that the firms representing Plaintiffs that have now requested MDL coordination disagree as to where an MDL proceeding should be established. Specifically, the Weitz Luxenberg

would be particularly acute with respect to Greenstone and Viatris, who are both east coast companies that never designed, manufactured, or had any authority to change the labeling of the product. For this reason alone, the Panel should reject Plaintiffs' request for transfer to the Northern District of California.

Further, the only plausible grounds for MDL centralization in California are superficial, at best, and should be disregarded. First, the Motion to Transfer notes that a majority of the current Plaintiffs who have filed related lawsuits hail from California. But this is only a temporary, strategically driven phenomenon. In short, Plaintiffs lead counsel have decided where they want this MDL to be formed, and they have stacked the deck with California-based Plaintiffs to try to achieve transfer to their preferred forum. Second, Plaintiffs argue that unique issues related to California's innovator liability law will be a focal point in this litigation, and therefore a judge sitting in California should decide them. But the presence of California claims in the initial cases likewise follows only from moving Plaintiffs' counsel's frontloading of California filings. Plaintiffs have already begun filing cases in other states, and those claims will be governed by various other states' laws. And, regardless, district judges sitting in diversity are well equipped to interpret the laws of foreign states. As a result, Plaintiffs oversell the significance of California state law issues in this litigation.

For all of these reasons, and as set forth more fully herein, the Panel should deny Plaintiffs' request but, if an MDL is formed, the Panel should transfer it to the Southern District of New York,

---

Plaintiffs request coordination in the Northern District of California *See* J.P.M.L. Dkt. No. 1. The Anapol Plaintiffs request the Southern District of California. *See* J.P.M.L. Dkt. No. 12. The Nigh Plaintiffs request the District of Massachusetts. *See* J.P.M.L. Dkt. No. 58. And the Aylstock Plaintiffs request the Northern District of Florida. *See* J.P.M.L. Dkt. No. 61. In any event, none of these venues have a sufficient connection with this litigation to support transfer under Section 1407.

which is the venue with the most direct connection to this litigation and also is most convenient for all parties and counsel.

## II.    BACKGROUND

Depo-Provera is the brand name for depot medroxyprogesterone acetate ("DMPA"), a prescription-only contraceptive. The drug was first marketed in United States in 1992 by way of FDA's approval of New Drug Application ("NDA") No. 20-246. According to Plaintiffs, Pfizer Inc. ("Pfizer") "effectively" has been the holder of the Depo-Provera NDA since 2002. *See, e.g.*, J.P.M.L. Dkt. No. 1-5, *Schmidt* Compl. ¶ 65. As the NDA holder, Pfizer "exerted exclusive control over the contents" of the labeling for both Depo-Provera and generic equivalents. *Id.* ¶ 122.

Greenstone was, until November 2020, a subsidiary of Pfizer. Prior to that, Greenstone had contracted with Pfizer to serve as the distributor of an authorized generic version of Depo-Provera. *Id.* ¶ 114. Greenstone never designed, formulated, or manufactured any DMPA-containing product and, moreover, it never held the Depo-Provera NDA. As such, Greenstone was forbidden by federal law from making any unilateral changes whatsoever to the warnings for and design of authorized generic Depo-Provera. *See id.* ¶ 123 ("Defendant Pfizer was not only in the best position to provide warnings regarding Depo-Provera's risks but was also the only entity legally authorized to update the label unilaterally under federal law.").[3]

In November 2020, Pfizer divested Greenstone and it became an indirectly, wholly owned subsidiary of Viatris. As part of this divestiture, Defendant Prasco, LLC ("Prasco") was granted the exclusive license to distribute authorized generic Depo-Provera. Greenstone, therefore, has not

---

[3] *See also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 614 (2011) (explaining that only the NDA holder may, in certain circumstances, unilaterally amend drug labeling); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 477 (2013) (noting that even the NDA holder cannot make any material changes to a drug's design without FDA's permission).

distributed DMPA for years. Further, Viatris has never held an approved application to market DMPA, nor has it ever designed, manufactured, distributed, or sold the medication. Finally, neither Viatris nor Greenstone has any corporate affiliation with Pfizer, who is the innovator of the product.[4]

### III.   ARGUMENT

#### A.  MDL Transfer To California Under Section 1407 Is Not Warranted At This Time

Plaintiffs propose to centralize the Depo-Provera litigation in the Northern or Central District of California based primarily on the supposition that the overwhelming majority of related cases will be filed in California. Yet, the assumption underlying Plaintiffs' position has proven to be false. Indeed, despite the moving Plaintiffs' counsel's best efforts to stockpile early filings in the Northern District of California, there are already related cases pending in at least 14 additional districts across the country, including, upon information and belief: The Eastern District of Louisiana, the District of New Jersey, the Western District of Pennsylvania, the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the Northern District of Florida, the District of Massachusetts, the Western District of Missouri, the District of Nevada, the Northern District of Indiana, and the Southern District of Indiana. *See generally* J.P.M.L. Dkt. No. 35-1, Pfizer's Sched. of Actions. Ultimately, this litigation is likely to encompass many more jurisdictions in all

---

[4] Plaintiffs' assertion that Pfizer is the "majority owner" of Viatris is simply false. *See, e.g.*, J.P.M.L. Dkt. No. 1-5, Schmidt Compl. ¶ 24. Indeed, no publicly traded company owns 10% or more of Viatris' stock. J.P.M.L. Dkt. No. 37-2, Viatris' Disclosure Statement. Plaintiffs also are incorrect when they state that Greenstone operates out of Pfizer's corporate offices in Peapack, New Jersey. *See, e.g.*, J.P.M.L. Dkt. No. 1-5, Schmidt Comp. ¶ 23. In reality, Greenstone moved its operations from New Jersey to West Virginia shortly after the divestiture in 2020.

50 states, considering that Depo-Provera has been on the market for over three decades and available for use throughout the United States.[5]

### B. If MDL Transfer Is Deemed Appropriate, Coordination in the Southern District of New York Will Promote the Just and Efficient Conduct of this Litigation.

If the Panel nonetheless chooses to centralize this litigation, Greenstone and Viatris propose transfer to the Southern District of New York because (i) all of the Defendants have principal places of business in the eastern United States, where Plaintiffs allege the tortious conduct occurred, (ii) nearly all of the lead counsel in this litigation maintain offices in or adjacent to New York City, (iii) the Southern District of New York is easily accessible to all parties and counsel via multiple international airports and major railway systems; and (iv) California is not the focal point of this litigation.

*First*, each of the Defendants is headquartered *thousands of miles* away from California.[6] Defendant Pfizer—who Plaintiffs allege will be the "primary defendant" in this litigation, J.P.M.L. Dkt. No. 1-1, Pls.' Br. in Supp. of Mot., at 5—is headquartered in New York City, *see* J.P.M.L.

---

[5] Even if Plaintiffs were correct that California's federal courts will be the epicenter of this litigation, that fact weighs against transfer, not in favor of it. If this litigation is to be centered in California, then there are a variety of tools that may be used by parties and the courts of California's four federal districts for formal and informal coordination of related actions that could be leveraged as an alternative to MDL centralization. *See, e.g.*, N.D. CAL. LR 13-3(a), (b); *see also* J.P.M.L. Dkt. No. 6, Or. (instructing the parties to "address what steps they have taken to pursue alternatives to centralization"). Yet, it already is clear that California will not be the focus of the litigation, therefore its connection to this litigation will ultimately be minimal.

[6] Plaintiffs have raised the availability of waivers pursuant to *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998), as a factor supporting consolidation in California. Yet, there is no suggestion Greenstone, Viatris, or, indeed, any Defendant other than Pfizer might be subject to personal jurisdiction in California in cases originating in another state. Further, Pfizer is likely to argue that it, too, is not at home in California, raising the possibility that no cases could ever be tried by the MDL Court if the litigation is transferred to a federal district court sitting in California. This, of course, would not be an issue in the Southern District of New York, where Pfizer is indisputably at home.

Dkt. No. 32, Pfizer's Corp. Disc. Stmt. And, indeed, because Pfizer held the Depo-Provera NDA and generic DMPA manufacturers were required to copy the brand labeling for their products at all relevant times, it can be reasonably inferred that much of the conduct that allegedly gives rise to Plaintiffs' claims occurred in the Southern District of New York, along with many potentially relevant documents and witnesses. As for the other Defendants: (i) Prasco is headquartered in Ohio, *Schmidt* Dkt. No. 40, Corp. Disc. Stmt.; (ii) Pharmacia & Upjohn Company LLC is headquartered in Michigan, *Schmidt* Dkt. No. 38, Corp. Disc. Stmt.; (iii) Pharmacia LLC, like Pfizer, maintains its principal place of business in New York, *Schmidt* Dkt. No. 39, Corp. Disc. Stmt.; (iv) Greenstone operates out of West Virginia and, during the relevant pre-2020 divestiture timeframe, operated out of New Jersey; and (v) Viatris is headquartered in Pennsylvania.

It is anticipated that Plaintiffs will seek extensive discovery from the Defendants in connection with this litigation. Accordingly, the burden on Defendants if they are required to litigate an MDL proceeding in California, thousands of miles away from their primary places of business, would be significant. In contrast, transfer to the Southern District of New York would promote efficiency given that New York is centrally located with respect to Defendants, their counsel, and common evidence—a factor to which the Panel routinely gives greater weight than the location of individual plaintiffs. *See In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372, 1376 (J.P.M.L. 2023) (transferring cases where "two of the three manufacturer defendants have their headquarters[,] thus, common evidence likely will be located there"); *In re Domestic Drywall Antitrust Litig.*, 939 F. Supp. 2d 1371 (J.P.M.L. 2013) ("Relevant documents and witnesses may be found in or near this district, inasmuch as several defendants have their principal places of business in Pennsylvania or other states in the mid-Atlantic area.").

***Second***, centralization in the Southern District of New York would be far more convenient for lead counsel for both Plaintiffs and Defendants than a California-based MDL. Given the number of court conferences that are anticipated in any MDL, transfer to an efficient location for counsel is a significant factor. *See, e.g.*, *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 802 F. Supp. 2d 1367, 1368 (J.P.M.L. 2011) (considering location of counsel as a factor in determining MDL location); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931 (J.P.M.L. 1980) (transferring MDL to District of New Jersey rather than Northern District of California because "counsel for the plaintiffs, as well as most counsel who represent the eight defendants and who are well acquainted with the underlying facts in this litigation, are predominantly located in either the Eastern United States or in the Midwest").

Here, lead counsel for the Weitz Luxenberg Plaintiffs maintains their nationwide headquarters in New York City.[7] Similarly, the Anapol Plaintiffs' primary attorney is located in Philadelphia, Pennsylvania.[8] Lead counsel for the Pfizer and Pharmacia entities are located in New York and Washington, D.C.  National counsel for Greenstone and Viatris is located in Pittsburgh, Pennsylvania. Prasco's attorneys operate out of Cincinnati. Accordingly, whereas an MDL in California would be inconvenient among the parties and counsel alike, the centralization in the Southern District of New York will promote efficiency and minimize logistical burdens.

***Third***, the Southern District of New York provides a central location for coordinated proceedings, readily accessible via three (3) international airports and major railway systems. Particularly in comparison to California, the Southern District of New York is a far more convenient venue for the Depo-Provera litigation, where individual plaintiffs will "reside in every

---

[7] https://www.weitzlux.com/locations/new-york-ny/

[8] https://www.anapolweiss.com/attorneys/tracy-a-finken/

corner of the country." *In re: BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d at 1379; *see also In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("[S]ince the parties and witnesses ordinarily do not attend pretrial conferences or hearings, it is unlikely that any of the named plaintiffs . . . will ever be required to travel to the transferee forum.").

There are many eminently qualified judges in the Southern District of New York who could ably oversee the Depo-Provera litigation should the Panel be inclined to centralize. To name just two, Judge Cathy Seibel and Judge Paul Engelmayer—neither of whom are currently presiding over an active MDL—would be particularly well suited for the task given their experience overseeing the *Mirena* MDLs, which similarly involved product-liability actions concerning an FDA-approved contraceptive product. Further, the Southern District of New York currently has significantly fewer MDLs pending than the Northern District of California at this moment.

***Fourth***, Plaintiffs have represented that most of the lawsuits that would be subject to MDL transfer will be initiated in California federal courts, and the Plaintiffs who have moved for transfer under Section 1407 have indeed filed their lawsuits in the federal courts of California. Yet, counsel for the filing Plaintiffs do not—and cannot—make this representation on behalf of *all* Plaintiffs who will ultimately file transferable lawsuits. Plaintiffs have represented to the Panel that a large number of related cases are likely to be filed and ultimately transferred. J.P.M.L. Dkt. No. 1-1, Pls.' Br. in Supp. of Mot., at 3. If that representation is accurate, then it defies logic that California will remain the epicenter of this litigation given that Depo-Provera was prescribed to women throughout the United States for more than 30 years. Indeed, there are already many cases pending outside of California, and that number will only increase.

In addition, it is well established that the location of constituent cases is not dispositive of where an MDL should be formed. *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*,

780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011) ("Because potential plaintiffs . . . will reside in every corner of the country and defendants are located in several states, the location of the currently filed cases is not a particularly significant factor in our decision."); *In re Sw. Life Ins. Co. Sales Pracs. Litig.*, 268 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) ("Even though no constituent action is currently pending in the Northern District of Texas, we are persuaded that this district is an appropriate transferee forum for this litigation."). This is particularly true where, as here, all pending actions are in their infancy. *See In re: BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L 2010) ("Since all the actions in this docket are at an early stage, transfer to another district" with no constituent action pending "should not be unduly disruptive.").

Finally, that some subset of the cases will involve "innovator liability" claims under California law does not support centralizing all cases in California. Transferee judges are routinely called upon to interpret the laws of states outside of their home district. *See In re A. H. Robins Co., Inc.*, 438 F. Supp. 942, 943 (J.P.M.L. 1977) ("We note that it is not peculiar for a federal district judge to be faced with applying law of a state other than the one wherein his or her district is located, and thus the presence of foreign state law in multidistrict litigation is of no particular consequence."). Accordingly, this factor poses no obstacle to transfer to the Southern District of New York.

## IV.    CONCLUSION

For the foregoing reasons, Greenstone and Viatris respectfully request that the Panel deny Plaintiffs' Motion to Transfer or, in the alternative, grant transfer under Section 1407 to the Southern District of New York for coordinated proceedings.

Dated: December 23, 2024

Respectfully submitted,

PIETRAGALLO GORDON ALFANO BOSICK
& RASPANTI, LLP

By: *s/ Clem C. Trischler*
Clem C. Trischler
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
(412) 263-1816 Telephone
(412) 263-4246 Facsimile
cct@pietragallo.com

*Counsel for Defendants Greenstone LLC and
Viatris Inc.*