**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTERONE ACETATE) PRODUCTS LIABILITY LITIGATION | MDL No. 3140 |

**REPLY IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS TO
THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 USC § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multi-District Litigation ("JPML") Rule 6.2, Plaintiffs Kristina Schmidt, Ajanna Lawson, Monique Jones, Huyen Nguyen, Taylor Devorak, Stacey Williams and Carey J. Williams, Tanya Edgerton, Latriece Love Goodlett and David Foster Goodlett, Debra Morrow, Mary Melendez, and Sheila Weekley and Jason Weekley (hereinafter, "Plaintiffs") respectfully submit this Reply in Support of Plaintiffs' Motion for an Order transferring the currently filed cases as well as any cases subsequently filed involving similar facts or claims involving meningioma and depot medroxyprogesterone acetate ("tag-along cases"), to the Northern District of California before the Hon. William H. Orrick III or Judge Jon S. Tigar. Alternatively, the Hon. Josephine L. Staton, sitting in the Central District of California, would be an excellent choice as well. Each judge sits in the State of California, which is only one of two forums in the entire country where the MDL court will have a robust choice of bellwether cases to be tried. Defendants' preferred forum will encounter significant problems attaining agreement on bellwether plaintiffs as discussed in the moving papers and in more detail below.

Plaintiffs have modified their position and are now seeking the Central District in the alternative because they only learned on December 4, 2024, from a phone call by the Clerk's office in Santa Ana, that Judge Josephine Staton, who had been sitting in the Santa Ana Division of the Central District, was recently relocated to the Los Angeles courthouse. Judge Staton was assigned to the initial case filed in C.D. Cal. by the undersigned, *Monique Jones v. Pfizer, Inc., et al.*, No.

1

2:24-cv-09195, but at that time she sat at the Santa Ana courthouse, which was not convenient, whereas the LA courthouse where she now presides is convenient.

All parties agree there should be an MDL which is limited to depot medroxyprogesterone acetate and meningioma. The only controverted issue requiring Panel decision is which judge and court to assign an MDL. While the Panel has asked the parties to address generally why informal coordination would not be a viable option, here there are numerous cases already filed—48 cases from 16 different jurisdictions—such that coordination would be very challenging absent a unitary forum. Additionally, no party has disputed that the purpose of the MDL should be *expressly limited* to the one injury that has prompted this litigation—the association between depot medroxyprogesterone acetate and meningioma tumors.

Unlike some MDL petitions where cases in various courts have been ongoing for a period of time with different phases of discovery, here the litigation is at a nascent stage for all cases. *Schmidt*, the earliest such case, filed by the undersigned, has a stipulation that granted Defendants' requests for a sixty-day extension to respond to the complaint. Additional cases were filed in the N.D. Cal. and transferred to Judge Vincent Chhabria, the judge assigned to *Schmidt*. However, given the MDL Petition filed by the undersigned, Defendants proposed and Plaintiffs agreed to a stipulation to stay proceedings pending the outcome of the Panel hearing, which was so ordered by Judge Chhabria on December 13, 2024. Accordingly, there have been no conferences held or pleadings filed other than the Rule 7.1 Disclosure. All cases are on equal footing procedurally.

I. **Defendants' Improperly Claim That A Recent FDA Letter is Preemptive**

Pfizer seeks to taint the Panel's impression of this litigation by claiming with no supportive attachments that last month the FDA rejected a proposed label change regarding meningioma that Pfizer suggested following the *Roland* study in the British Medical Journal. Said letter and the communications between Pfizer and the FDA with the actual proposed text were not attached, and they have not been produced despite a written and oral request. The merits and any preemption

issues are to be addressed by the transferee Judge, presumably after discovery. There are inevitably nuances and facts that make Pfizer's claim questionable, including the fact that there is a later study published in the peer-reviewed journal *Cancer* on Sept 30, 2024, Griffin, R.L. "The Association between Medroxyprogesterone Acetate Exposure and Meningioma," *Cancers* **2024**, 16, 3362, which Pfizer does not state it had provided to the FDA. That study concludes:

> The current results are consistent with the prior literature, which reports an association between injection exposures to MPA and a stronger association with increasing use of MPA. Women should be cautioned about the prolonged use of MPA, and future research should examine whether the extended use of MPA is associated with the meningioma grade. *Id.* at 1.

Importantly there is a very strong design defect claim in the complaints and described in the Petition. Pfizer has an approved product that it hardly markets in the US which is a safer alternative design–Depo-SubQ 104 Provera, which is the same depot medroxyprogesterone acetate administered subcutaneously instead of intramuscularly at the same schedule of four times a year, which is equally efficacious as a contraceptive, yet contains a significantly lower and safer dose (104 mg as opposed to 150 mg). Therefore, regardless of the warnings claim, this litigation has a very strong design defect claim not impacted by *Wyeth v. Levine*, 555 U.S. 555 (2009).

## II. Defendants' Advocacy for the Southern District of New York Over-Emphasizes the Import of Factors Mooted by Technological Developments

**E**lectronic documentary discovery and the success of Zoom hearings should alter the landscape of MDL venue selection criteria. Defendants cite decades-old JPML decisions for the proposition that proximity to the corporate defendant is important because documents are located there and travel would be easier for corporate witnesses. We have learned a lot since COVID, and Zoom status conferences have become a terrific device to save costs and avoid needless travel in MDLs. At an *In re JUUL* MDL status conference, Judge Orrick stated:

> "[M]y rule is going to be, for all of my cases, that in CMCs, going by Zoom is the way to go. Because coming -- it just costs too much money for people. I am confident that I have saved more than $1 million of clients' money by doing things

remotely. And if you multiply that by federal judges across the country, Zoom has been a boon." Transcript of July 16, 2021 Proceedings, MDL No. 2913, at 11.

In the most recent MDL the undersigned has been in leadership, *In re Exactech*, MDL No. 3044, formed in October 2022 and stayed two months ago following a bankruptcy filing on October 29, 2024, MDL Judge Nicholas Garaufis held only three (3) in-person conferences and all others were conducted via Zoom. Regarding location of documents, few if any lawyers forty years of age or younger have had the experience of going to a corporate headquarters or document repository to manually cull through banker boxes or touch paper. Essentially all documents are now produced electronically. Proximity to documents is no longer a legitimate concern. As to corporate witnesses, regardless of the location of an MDL, videotaped depositions of corporate witnesses will occur proximal to where they reside, not the location of the MDL. Hence, the only factor remaining regarding convenience is for trial, if any cases ever get to trial. Given that Depo-Provera came on the market for contraception more than thirty years ago, it is doubtful that many of the key witnesses are still employed by Pfizer. In fact, the developers of the product were in Michigan. Key corporate witnesses will be retired, deceased, or working elsewhere.

### III.    The Northern or Central Districts of California are the Most Appropriate

#### A.  N.D. Cal has extensive experience with *Daubert* and Preemption Issues

Pfizer argues that the MDL belongs in NY because S.D.N.Y. has some inexplicable unique experience with *Daubert* causation and FDA preemption issues, suggesting that the California federal courts do not. Pfizer has a conveniently bad memory. They were the defendant in a massive MDL, *In re Bextra and Celebrex Mktg. Sales and Prod. Liab. Litig*. As Judge Breyer explained:

> The Court also adjudicated a number of dispositive motions affecting a substantial portion of the docket, including motions to dismiss purchase claim class actions on the grounds of federal preemption and state law and *Daubert* motions in the product liability cases with respect to whether Celebrex can cause heart attacks and strokes….By the end of 2008, Pfizer Inc. announced that it had resolved the bellwether trial cases, as well as thousands of other product liability cases. MDL No. 1699, No. 05-cv-01699-CRB (N.D. Cal. Mar. 29, 2013).

4

Moreover, *Pfizer has advocated* for the Northern District of California. *See In re Viagra*, MDL No. 2691, Def. Pfizer's Resp. in Support of Transfer to N.D. Cal., D.I. 14 at 8 (J.P.M.L. Dec. 22, 2015). Pfizer argued in *Viagra*, "[t]he Northern District [of California] is convenient." *Id.* Pfizer highlighted, just as Plaintiffs have here, that "San Francisco is a major metropolitan area that offers accessibility to all parties, counsel, and potential witnesses." *Id.* Additionally, Pfizer touted N.D. Cal.'s "efficiency ... in managing litigation generally." *Id.* at 5-6.

While Defendants advance the position that S.D.N.Y. is somehow uniquely situated in its jurists' expertise and experience in deciding pharmaceutical preemption motions by citing to two MDLs involving an intrauterine device (IUD) called Mirena, those cases are dissimilar to the issues here,[1] and the Northern District of California has proven equally capable. In fact, the Hon. Jon S. Tigar recently decided a complex set of summary judgment motions on similar issues that will be contested here, in an informally coordinated federal class action involving claims of pharmaceutical design defect and failure to warn, among other things. *See Holley v. Gilead Sci., Inc.*, No. 18-cv-06972-JST, 2023 WL 6390598, at *9 (N.D. Cal. Sept. 28, 2023) (granting and denying in part the defendants' motion for summary judgment on preemption grounds). Further, it can hardly be argued that Moving Plaintiffs are forum shopping or cherry-picking a venue based on alleged judicial favoritism; Judge Tigar dismissed the *Holley* plaintiffs' claims for failure to warn post-approval. *See id.* The *Holley* matter, which collectively involved over 3,000 plaintiffs from nearly every jurisdiction in the country, also demonstrates that the Northern District has competent and efficient judges that are more than capable of handling this MDL. Judge Tigar resolved three separate *Daubert* motions seeking the exclusion of thirteen (13) different expert

---

[1] The two cases cited have nothing in common with Depo-Provera other than being contraceptives with a different progestin. The case before Judge Seibel involved perforation of the uterus arising from an intrauterine device (IUD). The second Mirena MDL before Judge Engelmayer involved the use of this IUD, which emits a small dose of levonorgestrel, which the plaintiffs alleged caused their idiopathic intracranial hypertension ("IIH"), a medical condition entirely distinct from meningiomas.

5

witnesses and in doing so excluded a number of plaintiffs' experts, again rebutting the notion that Moving Plaintiffs seek the Northern District to exploit some unfair advantage. *See, e.g.*, Order, No. 4:18-cv-069742-JST, [D.I. 1223] (J. Tigar, Mar. 27, 2023). The *Holley* matter later settled in June 2024. *See* Joint Stipulation and Order to Stay Case Deadlines Following Settlement, No. 4:18-cv-069742-JST, [D.I. 1621] (J. Tigar, June 7, 2024).

Judge Orrick addressed complex FDA preemption issues in the JUUL litigation *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178 (N.D. Cal. 2018), *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 745 (N.D. Cal. 2019) which then became the MDL *In re Juul Labs, Inc., Mktg., Sales Practices, and Prods. Liab. Litig.,* 497 F. Supp. 3d 552 (N.D. Cal. 2020) where he also addressed preemption. He adjudicated *Daubert* challenges to twenty-two experts in the first bellwether case. *See, In re JUUL Labs, Inc. Mktg, Sales Practices & Prods. Liab. Litig.*, No. 19-md-02913-WHO, 2022 WL 1814440, at *1 (N.D. Cal. June 2, 2022).

Judge Josephine L. Staton has capably handled *In re Vizio, Inc. Consumer Privacy Litig.*, MDL No. 2693, which resulted in a Class Action settlement within three years of filing. *See* Judgment, No. 8:16-ml-02693-JLS-KES, [D.I. 339] (C.D. Cal. Aug. 14, 2019).

Proximity to anticipated bellwether plaintiffs' doctors is also valuable. In a New York state court litigation, *In re Dilantin*, Pfizer argued forcefully that non-New York resident plaintiffs' claims had "no connection" to the State of New York.[2] In that case, Pfizer highlighted how "witnesses and records relating to [the plaintiffs'] Dilantin-related medical care [were] located outside of New York" and noted how, like here, the drug at issue "was developed by entities outside of New York (entities which Pfizer acquired decades later)." *Id.* Pfizer stated further that "nothing about the fact that Pfizer has its headquarters in New York changes the analysis— … the nonresident plaintiffs' claims have no substantial nexus to New York." *Id.* Yet here Defendants

---

[2] *In re Dilantin Litig.*, Index No. 451095/2019, Defs.' Mot. to Sever and Dismiss (N.Y. Sup. Ct. Jan. 13, 2020) at 4, *attached hereto as* **Exhibit A**.

argue precisely the opposite, despite Depo-Provera being developed by a Michigan company nearly 50 years before New York-based Pfizer acquired it.

### B. San Francisco and LA are convenient, Pfizer has extensive activity there, and the courts have the capability to take on a new MDL

Defendant Pfizer's outside counsel in this litigation, DLA Piper, employs nearly 400 California lawyers spread across four separate offices in the State. It thus cannot seriously be argued that California is an inconvenient forum for Defendants' counsel, either. Moreover, Weitz & Luxenberg has a ten-lawyer office in Los Angeles where attorney Melinda Nokes who filed the cases for the firm is based. The undersigned from the New York office appreciate the concern by Defendants counsel as to what is convenient for them, and find the California venues sufficiently convenient, especially when routine status conferences can be conducted by Zoom. Moreover, Pfizer overlooks its massive presence in San Diego, La Jolla, and South San Francisco that its website heralds. And importantly, this Panel has held that even when an MDL court is far from corporate headquarters, "the defendants should not be inconvenienced by centralization in this district, as they appear to do substantial business here." *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, MDL No. 3044, [D.I. 115] (J.P.M.L. Oct. 7, 2022).

Defendants also try to paint California as overburdened with MDLs while divining that the S.D.N.Y. has availability. This ignores that the S.D.N.Y. has twelve active MDLs, compared with C.D. Cal. which has just four, while also having the same number of judgeships (twenty-eight). Further, C.D. Cal. is the third ranked federal district in the entire country in terms of shortest mean time from filing to disposition of civil actions. The Southern District of New York is ranked fifteenth. Moreover, Judge Staton has ten cases out of the twelve filed Depo-Provera meningioma cases in C.D. Cal. assigned to her, far more than any other Judge to date.

### IV. Defendants Skirt the Key Issue of Attaining Bellwether Triable Choices

Defendants' responses misapprehend the reality of this litigation: the most populous state in the country—California—is one of only two states that permit individuals to proceed with pharmaceutical failure to warn personal injury claims even when only the generic version of the drug was used. In every other state, there is no "innovator liability," and such generics-only claims, excepting authorized generics, are preempted under Supreme Court law. Thus, the most cases have been and will be filed in California, not due to gaming as Defendants cynically assert, but simply because women in other states are left without a remedy if they used only generic products which comprise the majority of the market since 2004. The undersigned have sadly declined numerous potential cases of women who underwent brain surgery for meningioma who only took generic medroxyprogesterone acetate because they have no remedy, whereas our California clients do have legally viable claims. Hence, there are many more California cases.

Defendants make light of Plaintiffs' well-founded concerns that, should the MDL be centralized somewhere other than California, this will severely limit the number of potential bellwether candidates over which the MDL judge can actually preside at trial. Conspicuously absent from Defendants' briefs are any offers that they will waive *Lexecon* if the case was to be assigned to any of the east coast courts they propose as alternatives to their preferred choice of S.D.N.Y. Defendants could simply affirm they will waive *Lexecon* rights for bellwether trials.

A recent law review article presenting competing views by the plaintiff and defense bars on this topic notes in the "Defense Recommendation" that "the bellwether selection process and *Lexecon* waiver decisions can be used as both a shield and a sword, allowing parties to prevent fewer desirable cases for each side to move forward in discovery."[3] Likewise, a prominent defense blog stated recently that "defendants should think long and hard about waiving *Lexecon* in any

---

[3] Adams, R., et al. (2021) "Bellwether Trials," *UMKC Law Review*: Vol. 89: No. 4, Article 14. Available at: https://irlaw.umkc.edu/lawreview/vol89/iss4/14

MDL."[4] Indeed, in the *In re Yasmin/Yaz* MDL, the court's ability to preside over bellwether trials was hampered by the defendants' refusal to waive *Lexecon*. *See In re Yasmin/Yaz*, 3:09-md-02100-DRH-PMF, MDL No. 2100, No. 3:09-cv-10217-DRH-PMF (S.D. Ill. Dec. 5, 2014) ("The defendants have exercised their right to have the cases tried in the jurisdictions which would be the appropriate forum if they had been filed there originally..."). This same pattern has played out countless times in other MDLs. *See*, *e.g.*, *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 22638, at *4 (M.D. Ga. Feb. 24, 2014) ("The parties did not agree to waive their 28 U.S.C. § 1407(a) right to remand of Cline's action back to Minnesota."); *see also In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 349 (5th Cir. 2017) (noting that the defendant reneged on its *Lexecon* waiver once it became clear there could be a consolidated trial, forcing the Fifth Circuit to scuttle a trial set before the MDL judge just one week later).

Here, if S.D.N.Y. is selected, given that there will be no New York plaintiffs in federal court, *all plaintiffs* will have the ability to refuse to waive *Lexecon* as not a single New York plaintiff could be filed in the MDL since diversity would be lacking. And Pfizer will have no *Lexecon* rights. Refusal to waive *Lexecon* is a problem on both sides of the v. Some plaintiffs simply will not want to or medically cannot travel for trial. Unlike Pfizer counsel who have one client, in a products MDL there are hundreds to thousands of clients who have their own opinions and will not always follow counsel's advice. Moreover, since inevitably defendants select the outlier subpar plaintiff cases, it becomes even harder to persuade a client to waive their rights to uproot for weeks to come to New York if their case is lacking. Obviously not all cases are equal. Some have better or worse product identification proofs since medical records can be long gone. Other factors on a case's strength include the degree of exposure to the drug, magnitude of

---

[4] Beck, J., "Another Reason MDL Defendants Should Not Waive Their Lexecon Rights," *Drug and Device Law Blog*, Mar. 14, 2022. Available at https://www.druganddevicelawblog.com/2022/03/another-reason-mdl-defendants-should-not-waive-their-lexecon-rights.html (last accessed Dec. 24, 2024).

damages, risk factors, comorbidities, and more. There will be good cases selected by plaintiffs who will waive *Lexecon* rights if the case was in NY, but Defendants will object if their choices are stymied by Plaintiffs' refusals to waive.

If the MDL is in California, there will be no *Lexecon* waiver issue since there will be a robust group of cases for the court to select from to find representative cases and none of the California Plaintiffs will have *Lexecon* rights. The suggestion by Pfizer that the court could seek a 28 U.S.C. § 292(d) intercircuit transfer is a terrible option. It slows down the ability of a trial by likely years given the hurdles required to get approval. Moreover, the MDL Judge needs to be willing and able to travel, and the court system will be saddled with the costs of travel and housing for the MDL Judge and law clerks for multi-week trial(s).

*Lexecon* waiver rights of both parties have impeded the ability to have timely bellwether trials. In the *Social Media* MDL, because certain Plaintiffs would not waive, bellwether cases selected by Defendants were not able to be tried. Thus, the Parties, including YouTube, represented by Joseph Petrosinelli, one of Pfizer's counsel in this litigation, co-signed a brief asking for the MDL Judge to receive an intercircuit assignment to preside over the trials of these cases post-remand. *See In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR, [D.I. 908], Defs.' Br. (N.D. Cal. May 29, 2024). As the brief explains, "intercircuit assignment requires that the transferor circuit chief judge designate a need, the transferee circuit chief judge consent to the designation, and the Chief Justice of the United States formally make the assignment." To date there has been no transfer.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel issue an order transferring all currently filed actions, as well as all later filed related actions, for coordinated and consolidated pretrial proceedings to the Northern District of California before Judge Orrick or Judge Tigar, or the Central District of California before Judge Staton.

Dated: December 30, 2024                    Respectfully Submitted,

/s/ Ellen Relkin

Ellen Relkin (ER-9536)
Brendan A. McDonough (BM-4172)
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10023
Phone: (212) 558-5715
Fax: (212) 344-5461
erelkin@weitzlux.com
bmcdonough@weitzlux.com

Melinda Davis Nokes (MN-5556)
Weitz & Luxenberg, P.C.
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Phone: (310) 247-0921
mnokes@weitzlux.com

*Counsel for Plaintiffs Kristina Schmidt, Ajanna Lawson, Monique Jones, Taylor Devorak, Huyen Nguyen, Stacey and Carey J. Williams, Tanya Edgerton, Latriece Love Goodlett and David Foster Goodlett, Debra Morrow, Mary Melendez, and Sheila Weekley and Jason Weekley*