# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| IN RE DILANTIN LITIGATION | Index No. 784000/2019 |

**THIS DOCUMENT RELATES TO:**

*Penrod, et al. v. Pfizer, Inc., et al.*, N.Y. Sup. Ct. New York County, Index No. 159346/2018

*Polenberg, et al. v. Pfizer, Inc. et al.*, N.Y. Sup. Ct. New York County, Index No. 451095/2019

*DeLumeau, et al. v. Pfizer, Inc. et al.*, N.Y. Sup. Ct. New York County, Index No. 451094/2019

(All actions in this Coordinated Proceeding)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND DISMISS ON THE GROUND OF FORUM NON CONVENIENS**

Defendants Pfizer Inc. ("Pfizer"), Pharmacia LLC f/k/a Pharmacia Corporation, Parke, Davis & Company LLC as successor-in-interest of Parke, Davis & Company, and Warner-Lambert Company LLC f/k/a Warner-Lambert Company (collectively "Defendants") submit this memorandum of law in support of their motion to sever the plaintiffs' claims and to dismiss the nonresident plaintiffs' claims under CPLR 327(a) on the ground of *forum non conveniens*.

This Court (among others in New York County) has consistently dismissed Pfizer on *forum non conveniens* grounds from product-liability actions filed by out-of-state plaintiffs, including in a decision unanimously affirmed by the First Department. *Wilson v. Pfizer, Inc.*, 867 N.Y.S.2d 21 (Sup. Ct. N.Y. Cty. June 13, 2008) (Shulman, J.), *aff'd sub nom. Avery v. Pfizer, Inc.*, 68 A.D.3d 633 (1st Dep't 2009); *Kuchinsky v. Pfizer, Inc.*, 2009 WL 1433051 (Sup. Ct. N.Y. Cty. Apr. 17,

Case MDL No. 3140   Document 79-2   Filed 12/30/24   Page 3 of 21

2009) (Shulman, J.); *Marochnik v. Pfizer, Inc.*, 920 N.Y.S.2d 242 (Sup. Ct. N.Y. Cty. June 19, 2008) (Shulman, J.); *see also Nicholson v. Pfizer, Inc.*, 278 A.D.2d 143 (1st Dep't 2000); *Keller v. Pfizer, Inc.*, No. 105650/07, slip op. (Sup. Ct. N.Y. Cty. Jan. 31, 2008) (Ling-Cohan, J.); *Jordan v. Pfizer, Inc.*, 2007 WL 9220810 (Sup. Ct. N.Y. Cty. July 17, 2007) (Edmead, J.); *Grant v. Pfizer Inc.*, No. 122164/02, slip. op. (Sup. Ct. N.Y. Cty. Oct. 8, 2004) (Shafer, J.); *Moran v. Pfizer Inc.*, No. 113602/98, slip op. (Sup. Ct. N.Y. Cty. April 10, 1999) (Gruner Gans, J.); *Fiskus v. Bristol-Meyers Squibb Co.*, 2016 WL 355504 (Sup. Ct. N.Y. Cty. Jan. 29, 2016) (Schecter, J.); *Turner v. Bristol-Meyers Squibb Co.*, 2016 WL 355509 (Sup. Ct. N.Y. Cty. Jan. 29, 2016) (Schecter, J.).

Consistent with this long line of decisions, the Court should dismiss the claims of the 35 out-of-state plaintiffs in this proceeding whose pharmaceutical, product-liability claims lack any substantial nexus to New York. These 35 plaintiffs are a paradigm for dismissal under the well-established New York precedent in that:

- They were not prescribed the medicine in New York.

- They did not receive or purchase the medicine in New York.

- They did not use the medicine in New York.

- The treating physicians for their alleged injuries are not located in New York.[1]

---

[1] Based on the information provided by these 35 plaintiffs (and the applicable New York case law), the Court need not engage in any further factual analysis as to these plaintiffs' contacts with New York before ruling on this motion. Moreover, this motion is equally applicable to any additional out-of-state plaintiffs who may file claims or have their cases transferred to this Court in the New York Dilantin litigation who meet these criteria. For example, there have been additional complaints relating to Dilantin use filed in St. Lawrence County (*Monacelli*) and New York County (*McClain*) that have been noticed for transfer (but have yet to be transferred) to this Court as part of the coordinated proceedings—the reasoning of this motion applies equally to non-resident plaintiffs in those cases who lack a substantial nexus to New York, and Defendants reserve the right to move to dismiss those plaintiffs' claims pending transfer to this Court.

2

## INTRODUCTION

This litigation involves Dilantin® (phenytoin), a life-saving anti-epileptic prescription medication. In this coordinated proceeding, there are currently 40 total plaintiffs, from 20 different states, who allege that they developed cerebellar atrophy as a result of using Dilantin and/or generic phenytoin. Thirty-five of those plaintiffs are from out of state and have no connection between New York and their claims. The only common fact among these plaintiffs is that each alleges that the use of Dilantin caused cerebellar atrophy. But each plaintiff's medical history, treating physicians, and specific circumstances of Dilantin prescriptions and use is entirely unique. Because the allegations that form the basis of Plaintiffs' claims raise individualized issues, their claims should be severed. And because the claims of the nonresident plaintiffs did not arise in and have no substantial nexus with New York, they should be dismissed for *forum non conveniens*.

It is well settled that a court need not "add to [its] heavy burdens by accepting jurisdiction of a cause of action having no substantial nexus with New York." *Wilson v. Pfizer, Inc.*, 867 N.Y.S.2d 21, at *4 (N.Y. Sup. Ct. June 13, 2008) (Shulman, J.). Appellate Division precedent recognizes that even where plaintiffs sue a New York-based defendant, no substantial nexus to New York exists—and dismissal is required—if a plaintiff was prescribed and used the medication, and received medical care from physicians, all in other states. *Nicholson v. Pfizer, Inc.*, 278 A.D.2d 143, 717 N.Y.S.2d 593 (1st Dep't 2000) (unanimously finding an abuse of discretion in refusing to dismiss a case where the plaintiff resided—and the medical care at issue was provided—in another state); *see also Avery v. Pfizer Inc.*, 68 A.D.3d 633 (1st Dep't 2009) (affirming this Court's decision in *Wilson, supra*). Moreover, it is irrelevant that these actions are part of a coordinated proceeding because the First Department has expressly "decline[d] to disregard the traditional forum non conveniens factors in favor of a 'mass tort litigation' approach." *Avery*, 68 A.D.3d 633.

3

Here, the 35 nonresident plaintiffs who are subject to this motion received the relevant treatment and were allegedly prescribed and used Dilantin in states other than New York. The witnesses and records relating to their Dilantin-related medical care are located outside of New York. And nothing about the fact that Pfizer has its headquarters in New York changes the analysis—the case law makes that clear, but in any event, Dilantin was developed by entities based outside of New York (entities which Pfizer acquired decades later). The nonresident plaintiffs' claims have no substantial nexus to New York and must thus be dismissed.

The Court should sever Plaintiffs' claims and dismiss the claims of the 35 nonresident plaintiffs so that they can be litigated in their home states.

## STATEMENT OF FACTS

Plaintiffs in this coordinated proceeding have filed three multi-plaintiff complaints. Some of the originally-named plaintiffs have voluntarily dismissed their claims. Of the 40 remaining plaintiffs in this coordinated proceeding, only three live in the State of New York. *See Penrod* Compl. ¶¶ 6–15; *Polenberg* Compl. ¶¶ 6–24; *DeLumeau* Compl. ¶¶ 6–18. And only two of the remaining out-of-state plaintiffs have provided medical records reflecting treatment in New York for their alleged Dilantin-related injuries.[2] This motion seeks dismissal of the 35 out-of-state plaintiffs who have no connection between their claims and New York.

_____

[2] Plaintiffs Bruce Hartman and Rick Joyce are residents of Ohio and Nevada, respectively, but both of these plaintiffs appear to have been treated for their alleged Dilantin-related injuries in New York. Accordingly, Plaintiffs Hartman and Joyce are not included within this motion, but Defendants reserve their right to move for the *forum non conveniens* dismissal of these two plaintiffs' claims, pending receipt and review of medical records relating to their use of Dilantin, if later records show that there is no substantial nexus between their claims and New York. Moreover, some of the same procedural concerns may exist in these cases—*e.g.*, the challenge of obtaining discovery from non-New York-based witnesses—but in the interest of presenting the Court with a motion at this early stage that requires no factual disputes or the need for fact findings, Defendants have not included these two plaintiffs in the current motion.

4

Each plaintiff's relevant background, as alleged in the Complaints and detailed in the available Plaintiff Fact Sheets ("PFS"),[3] is as follows:

1.     Plaintiff Mary Ward is a resident of Alabama and has received no relevant medical treatment in New York. *Penrod* Compl. ¶ 15; *Ward* PFS.

2.     Plaintiffs Russel Paul Bickner and Elizabeth DeLumeau are residents of Colorado. *Polenberg* Compl. ¶ 21; *DeLumeau* Compl. ¶ 6. Neither plaintiff received any relevant medical treatment in New York. *Bickner* PFS; *DeLumeau* PFS.

3.     Plaintiff Carl Cram is a resident of Delaware and received no relevant medical treatment in New York. *DeLumeau* Compl. ¶ 8; *Cram* PFS.

4.     Plaintiffs Mark Adams, June Brend, Luz Rosado-Cabrera, Cathy Seidenstein, and Eugene Steele are residents of Florida. *Penrod* Compl. ¶¶ 9, 10; *Polenberg* Compl. ¶ 16; *DeLumeau* Compl. ¶¶ 15. None of these plaintiffs received any relevant medical treatment in New York. *Adams* PFS; *Brend* PFS; *Rosado-Cabrera* PFS; *Steele* PFS; *Seidenstein* PFS.

5.     Plaintiffs William Dean and Dale Hart are residents of Illinois. *Polenberg* Compl. ¶ 9; *DeLumeau* Compl. ¶ 17. None received relevant medical treatment in New York. *Dean* PFS; *Hart* PFS.

6.     Plaintiff George Goode is a resident of Indiana and received no relevant medical treatment in New York. *DeLumeau* Compl. ¶ 9; *Goode* PFS.

_____

Three other nonresident plaintiffs (Patti Denucci, Ann MacKenzie and Nancy Musser) have produced records that reference New York healthcare providers, but those records do not reflect that Dilantin was prescribed or dispensed in New York, nor do they reflect any treatment in New York for these plaintiffs' alleged Dilantin-related injuries. Accordingly, the claims of plaintiffs Denucci, MacKenzie, and Musser have no substantial nexus to New York, so their claims should be dismissed.

[3] Not all plaintiffs have provided Plaintiff Fact Sheets. The out-of-state plaintiffs who have not provided a Plaintiff Fact Sheet and have alleged no relevant treatment in New York are included in this motion.

5

7.     Plaintiff Gary Poley is a resident of Iowa and received no relevant medical treatment in New York.  *Penrod* Compl. ¶ 8; *Poley* PFS.

8.     Plaintiff Ann MacKenzie is a resident of Massachusetts and received no relevant medical treatment in New York.  *Polenberg* Compl. ¶ 23; *MacKenzie* PFS.

9.     Plaintiff Steve Smith is a resident of Montana and received no relevant medical treatment in New York.  *DeLumeau* Compl. ¶ 11; *Smith* PFS.

10.     Plaintiffs Judith Marie Coppla and Jo Goldsmith, are residents of Nevada. *Polenberg* Compl. ¶¶ 12, 13.  Neither received any relevant medical treatment in New York. *Coppla* PFS; *Goldsmith* PFS.  *Polenberg* Compl. ¶ 18.

11.     Plaintiffs Eddie Pinnix and Meiling Serrano are residents of North Carolina. *DeLumeau* Compl. ¶ 14; *Penrod* Compl. ¶ 7.  Neither received any relevant medical treatment in New York.  *Pinnix* PFS; *Serrano* PFS.

12.     Plaintiffs Scott Penrod and Steven Rhoades are residents of Ohio.  *Penrod* Compl. ¶ 6; *DeLumeau* Compl. ¶ 7.  Neither received any relevant medical treatment in New York. *Penrod* PFS; *Rhoades* PFS.

13.     Plaintiffs Harold Hoffman and Patti Denucci are residents of Pennsylvania and received no relevant medical treatment in New York.  *Penrod* Compl. ¶ 12; *Polenberg* Compl. ¶ 19; *Hoffman* PFS; *Denucci* PFS.

14.     Plaintiffs Shawn Canady and Charles Pruitte are residents of South Carolina. *DeLumeau* Compl. ¶ 13; *Penrod* Compl. ¶ 13.  Neither received any relevant medical treatment in New York.  *Canady* PFS; *Pruitte* PFS.

6

15.     Plaintiffs James Baughman and Timothy Lee Horton are residents of Tennessee. *DeLumeau* Compl. ¶ 18; *Polenberg* Compl. ¶ 14.  Neither received any relevant medical treatment in New York.  *Baughman* PFS; *Horton* PFS.

16.     Plaintiffs Craig Farley, Nancy Musser, and Tammy Lynn Ray are residents of Texas.  *Penrod* Compl. ¶ 11; *Polenberg* Compl. ¶ 20; *DeLumeau* Compl. ¶ 10.  None received any relevant medical treatment in New York.  *Farley* PFS; *Ray* PFS; *Thelen* PFS.

17.     Plaintiff Ellen Mason is a resident of Virginia and received no relevant medical treatment in New York.  *DeLumeau* Compl. ¶ 16; *Mason* PFS.

18.     Plaintiff Joyce Williams is a resident of Washington and has not alleged a connection between her claim and New York.  *Polenberg* Compl. ¶ 24.

19.     Plaintiffs Andrew Eick, Dean Kusik, and Kenyhan Williams are residents of Wisconsin.  *Polenberg* Compl. ¶¶ 8, 10, 17.  None received any relevant medical treatment in New York.  *Eick* PFS; *Kusik* PFS; *Williams* PFS.

20.     Three plaintiffs are New York residents,[4] and two out-of-state plaintiffs appear to have some nexus between their claims and New York.[5]  Accordingly, this motion is not directed at those plaintiffs.

* * *

Defendant Pfizer is headquartered in New York.  But Dilantin—the medication at issue in this litigation—was developed outside of New York by other entities that Pfizer later acquired. *See* Affidavit of Susan Grant, dated January 7, 2020  ¶¶ 2–9.

---

[4] Plaintiffs Amy Polenberg, Crista Ann Sullo, and Adrian Zemken are residents of New York. *Polenberg* Compl. ¶¶ 6, 7; *DeLumeau* Compl. ¶ 12.  These plaintiffs are the only New York-resident plaintiffs currently in this coordinated proceeding.

[5] Plaintiffs Hartman and Joyce.  *See supra* n.2.

7

## LEGAL STANDARDS

### I.    *Forum Non Conveniens*

"Forum non conveniens is an equitable doctrine whereby a court in its discretion may decline to exercise jurisdiction over a transitory cause of action upon considerations of justice, fairness and convenience." *Martin v. Mieth*, 35 N.Y.2d 414, 418 (1974).  Under CPLR 327(a), which codifies the doctrine, "[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just."   This requires the Court to weigh various public and private interests to determine whether an action "would be better adjudicated elsewhere." *Islamic Republic of Iran v. Pahlavi*, 62 N.Y.2d 474, 478–79 (1984).

"Among the factors to be considered are the burden on the New York courts, the potential hardship to the defendant, and the unavailability of an alternative forum in which plaintiff may bring suit," as well as the residency of the parties and whether "the transaction out of which the cause of action arose occurred primarily in a foreign jurisdiction." *Id.* at 479.  "No one factor is controlling." *Id.*  Instead, grounded in the "flexibility" of the doctrine, the Court must consider "the facts and circumstances of each case." *Id.*  The presence of a defendant that has "domicile or residence in this state … shall not preclude the court from staying or dismissing the action." CPLR 327(a); *see also Avery*, 68 A.D.3d at 634.

### II.    Severance

CPLR 603 provides that "in furtherance of convenience or to avoid prejudice the court may order a severance of claims or may order a separate trial of any claim, or of any separate issue." Severance under CPLR 603 is proper where "individual issues predominate, concerning particular circumstances applicable to each plaintiff," and there "is the possibility of confusion for the jury." *Bender v. Underwood*, 93 A.D.2d 747, 748 (1st Dep't 1983); *Gittino v. LCA Vision, Inc.*, 301

8

A.D.2d 847, 847–48 (3d Dep't 2003) (same, quoting *Bender*, 93 A.D.2d at 748); *see also Abbondandolo v. Hitzig*, 282 A.D.2d 224, 225 (1st Dep't 2001) (holding that severance of 65 individual plaintiffs' claims was proper, even though plaintiffs relied to an extent on the same evidence, because a single trial of dissimilar individual issues would result in prejudice to the defendants).

### ARGUMENT

This Court should dismiss the claims of the nonresident plaintiffs for *forum non conveniens* under CPLR 327(a) and sever the plaintiffs' claims under CPLR 603.

**I.     The Court should dismiss the nonresident plaintiffs' claims under the *forum non conveniens* doctrine.**

The claims of the nonresident plaintiffs lack a substantial nexus to New York, and the Court thus should dismiss them under the *forum non conveniens* doctrine.

"It is well established that New York courts need not entertain causes of action lacking a substantial nexus with New York." *Manaster v. Northstar Tours*, 193 A.D.2d 651, 651–52 (2d Dep't 1993) (internal quotations omitted). This Court too has recognized, in a pharmaceutical case involving Pfizer, that "New York courts should not be under any compulsion to add to their heavy burdens by accepting jurisdiction of a cause of action having no substantial nexus with New York." *Wilson*, 867 N.Y.S.2d 21, at *4 (Shulman, J.) (quoting *Silver v. Great Am. Ins. Co.*, 29 N.Y.2d 356, 361 (1972)). And as a result, this Court routinely dismisses on *forum non conveniens* grounds claims against pharmaceutical companies where the only connection between the claims and New York is the defendant-company's residence here. *See id.*; *Avery*, 2008 WL 9485050, *aff'd*, 68 A.D.3d 633 (1st Dep't 2009); *Kuchinsky*, 2009 WL 1433051, at *1–3.

The same result should obtain here. As explained, the nonresident plaintiffs are not from New York, they did not purchase, receive, or use Dilantin in New York; their relevant prescribing

and treating physicians live outside New York; and they were not injured in New York. Put simply, the "key facts leading to the [alleged] injury"—*i.e.*, where the "plaintiff[s] w[ere] prescribed and took" Dilantin—occurred outside New York. *Marochnik v. Pfizer, Inc.*, 920 N.Y.S.2d 242, at *6 (Sup. Ct. N.Y. Cty. June 19, 2008) (Shulman, J.). The only connection between the nonresident plaintiffs' claims and this State is Pfizer's residence here. But that plainly is not enough to justify the exercise of jurisdiction. *See Manaster*, 193 A.D.2d at 652 ("The sole fact of the defendants' New York residence does not establish a nexus sufficient to merit the retention of jurisdiction."); *Avery*, 68 A.D.3d at 634. This Court should dismiss their claims.

### A. Appellate Division precedent compels the dismissal of the nonresident plaintiffs.

The First Department's decisions in *Nicholson v. Pfizer, Inc.*, 278 A.D.2d 143 (1st Dep't 2000), and *Avery v. Pfizer, Inc.*, 68 A.D.3d 633 (1st Dep't 2009), compel a *forum non conveniens* dismissal here.

In *Nicholson*, the First Department unanimously reversed the trial court's denial of Pfizer's motion to dismiss for *forum non conveniens* where the plaintiff resided, and the medical care at issue was provided, in another state. 278 A.D.2d at 143. There, a New Jersey resident alleged that he sustained injuries after taking a medication in New Jersey. *Id.* The plaintiff's treatment for the alleged injuries occurred in Florida and New Jersey. *Id.* And his physicians were also located in New Jersey, "beyond the reach of New York's subpoena power." *Id.* Because of these connections to states other than New York, the First Department found it reversible error to refuse to dismiss the action despite Pfizer's headquarters here. *Id.*

Likewise, in *Avery*, the First Department—affirming this Court's decision—held that this Court's *forum non conveniens* dismissal of Pfizer was proper because the plaintiff was a resident of another state, the prescribing physician and treating physicians were in another state, and all

witnesses were in another state. 68 A.D.3d at 634. In so holding, the court rejected the "[p]laintiffs' 'bare assertion[s]' of fraud, allegedly committed at defendant's corporate headquarters in New York," as sufficient "to create a substantial nexus with New York outweighing the compelling reasons for dismissal." *Id.* (internal citation omitted).

*Nicholson* and *Avery* are not alone. Numerous New York decisions recognize that *forum non conveniens* dismissal is appropriate when a nonresident plaintiff used a pharmaceutical product and was allegedly injured outside New York.[6] Accordingly, this Court should dismiss the nonresident plaintiffs' claims on the ground of *forum non conveniens*.

### B. The *forum non conveniens* factors favor dismissal.

The *forum non conveniens* factors support the dismissal of the nonresident plaintiffs' claims here: (1) the transactions giving rise to this litigation occurred outside New York; (2) the fact witnesses and documentary evidence relevant to this litigation are primarily located outside New York and, thus, beyond the subpoena power of the court for purposes of trial testimony; (3)

---

[6] *See, e.g.*, *Bewers v. Am. Home Prod. Corp.*, 99 A.D.2d 949, 949–50 (1st Dep't 1984), *aff'd*, 474 N.E.2d 247 (N.Y. 1984) (reversing lower court decision and dismissing action on *forum non conveniens* ground because "all of the facts and circumstances surrounding these lawsuits, except for the alleged decision by the defendants, allegedly made in New York, to market the drugs in the United Kingdom without adequate warnings respecting known dangerous side effects, occurred in the United Kingdom"); *Avery*, 68 A.D.3d at 634; *Nicholson*, 278 A.2d at 143; *Stewart v. Bristol-Myers Squibb Co.*, 2018 N.Y.Slip Op. 30124(U), 2018 WL 513199, at *3 (N.Y. Sup. Ct. Jan. 23, 2018); *Marochnik*, 920 N.Y.S.2d 242, 2008 WL 8177738, at *6; *Wilson*, 867 N.Y.S.2d 21, 2008 WL 2468538, at *5; *see also In re Oxycontin II*, 76 A.D.3d 1019, 1021 (2d Dep't 2010) (dismissing out-of-state plaintiffs' complaints on *forum non conveniens* ground because the prescription medication "was not manufactured in New York, [] the defendant's corporate offices [were] not located in this State," and also because "[n]one of the nonresident plaintiffs purchased Oxycontin in New York, none ingested the drug here and, importantly, none received treatment for alleged resulting injuries in this State"); *Jackam v. Nature's Bounty, Inc.*, 70 A.D.3d 1000, 1002 (2d Dep't 2010) ("[T]he motion to dismiss the complaint on the ground of *forum non conveniens* should have been granted … [where] injured plaintiff injected [the product at issue] in Georgia, and … his alleged injury and all of his subsequent medical treatment for that alleged injury occurred in Georgia.").

11

the plaintiffs are not New York residents; (4) this Court will be required to apply myriad state laws; and (5) there are adequate alternative forums available. As a result, the interests of justice favor dismissing the claims of the nonresident plaintiffs.

> **1.    The transactions giving rise to this litigation occurred outside New York.**

As the Court of Appeals has recognized, the fact "that the transaction out of which the cause of action arose occurred primarily in a foreign jurisdiction" weighs heavily in favor of *forum non conveniens* dismissal. *Pahlavi*, 62 N.Y.2d at 479. Accordingly, New York courts routinely dismiss actions for *forum non conveniens* if the plaintiff used the medication, sustained the alleged injury, and received medical treatment all in a state other than New York. *See, e.g.*, *Oxycontin II*, 76 A.D.3d at 1019, 1021; *Jackam*, 70 A.D.3d at 1002; *Bewers*, 99 A.D.2d at 949–50;

This Court too has held that dismissal is appropriate if "the transactions giving rise to th[e] action all occurred [outside of New York]." *Wilson v. Pfizer, Inc.*, 867 N.Y.S.2d 21, *aff'd sub nom. Avery*, 68 A.D.3d 633 (1st Dep't 2009). In *Wilson*, this Court dismissed a product-liability action brought by a nonresident plaintiff against Pfizer, holding that the plaintiff obtained and used the product at issue outside of New York and received medical treatment outside of New York. That action had to be litigated in Georgia, this Court explained, because the "plaintiff was prescribed [the drug] in Georgia, obtained his prescription and primarily ingested the drug there and received almost all of his medical treatment in Georgia." *Id.*; *see also Jackam*, 70 A.D.3d at 1002; *Stewart*, 2018 N.Y.Slip Op. 30124(U), 2018 WL 513199, at *3 ("The significant events giving rise to this law suit primarily arose in Ohio since Plaintiff was prescribed Eliquis in Ohio, he took it in Ohio, he sustained his injuries in Ohio and he was treated in Ohio.").

Like the plaintiffs in *Avery*, *Marochnik*, *Nicholson*, *Wilson*, *Bewers*, *Jackam*, and *Stewart*, the nonresident plaintiffs here were prescribed Dilantin, ingested Dilantin, and received medical treatment all outside New York. As a result, their claims lack a substantial nexus with New York.

### 2.     Fact witnesses and documentary evidence are primarily located outside New York.

The location of witnesses and evidence is given great weight in the *forum non conveniens* analysis, and New York courts routinely grant motions to dismiss where fact witnesses and documentary evidence are located beyond New York courts' subpoena power. *See, e.g., Pahlavi*, 62 N.Y.2d at 479 (affirming dismissal on *forum non conveniens* grounds when "the witnesses and evidence [were] located in Iran"); *World Point Trading PTE, Ltd. v. Credito Italiano*, 225 A.D.2d 153, 162 (1st Dep't 1996) (affirming *forum non conveniens* dismissal when the majority of witnesses were located in Italy); *Avnet, Inc. v. Aetna Cas. & Sur. Co.*, 160 A.D.2d 463, 464 (1st Dep't 1990) (affirming dismissal on *forum non conveniens* ground after finding that "witnesses will most likely be located" in another state).

This focus on the location of the witnesses and evidence serves two purposes: avoiding the "potential hardship to proposed witnesses including, especially, nonparty witnesses" and ensuring that the court has "the authority to subpoena … nonparty witnesses" who have "critical information on both proximate cause and damages." *Oxycontin II*, 76 A.D.3d at 1021; *see also Stewart*, 2018 N.Y.Slip Op. 30124(U), 2018 WL 513199, at *3 ("Defendants would suffer a hardship if this matter were to be tried in New York because Plaintiff's prescribing and treating physicians are located in Ohio and are beyond New York's subpoena power."). Both of those purposes support dismissal here. As in the host of authority cited above, all of the events leading to the alleged injuries of the nonresident plaintiffs in this litigation occurred outside of New York. This creates a significant potential for prejudice to Defendants if these cases are tried here—the key medical

witnesses are outside of this Court's subpoena power, and that fact alone "presents substantial difficulties" for Defendants. *See Oxycontin II*, 76 A.D.3d at 1021 (recognizing that litigating in New York would "present[] substantial difficulties for the defendants inasmuch as New York courts lack the authority to subpoena out-of-state nonparty witnesses"). But even short of trial, obtaining discovery from out-of-state, third-party witnesses may be time consuming and cumbersome if the cases proceed in New York. The laws of these witnesses' home states (not New York) will determine whether parties can seek discovery from them and how such discovery may be obtained.

The fact that Pfizer is headquartered in New York does not support retention of the nonresident plaintiffs' claims. New York law is settled that "[t]he sole fact of the defendants' New York residence does not establish a nexus sufficient to merit the retention of jurisdiction." *Manaster*, 193 A.D.2d at 652; *see also Stewart*, 2018 N.Y.Slip Op. 30124(U), 2018 WL 513199, at *3 (dismissing on *forum non conveniens* ground even though "New York [was] the location of Defendants' headquarters, where most of the defense witnesses [were] located" and "where most of the relevant defense records regarding the design, testing, manufacturing, regulatory approval and marketing of [the product] [were] located"). Instead, the key question is where the plaintiff used the product, sustained the alleged injury, and received medical treatment. As the First Department recognized in a case involving Pfizer, if a "plaintiff's treating physicians … are located [outside New York], and beyond the reach of New York's subpoena power," it is an abuse of discretion not to dismiss on the ground of *forum non conveniens*. *Nicholson*, 278 A.D.2d at 143.

Because this Court cannot compel out-of-state, nonparty witnesses to submit to jurisdiction in New York to testify at trial, this Court should dismiss the nonresident plaintiffs' claims.

### 3. Plaintiffs' non-New York residence strongly favors dismissal.

A plaintiff's residence "is generally the most significant factor" in determining a *forum non conveniens* motion. *Bacon v. Nygard*, 160 A.D.3d 565, 566 (1st Dep't 2018) (citing *Sweeney v. Hertz Corp.*, 250 A.D.2d 385, 386 (1st Dep't 1998)); *accord Cadet v. Short Line Terminal Agency, Inc.*, 173 A.D.2d 270, 270 (1st Dep't 1991). Accordingly, "the fact that plaintiff's residence is outside New York militates against retention of New York as the forum." *Wilson*, 867 N.Y.S.2d 21, 2008 WL 2468538, at *5, *aff'd*, 68 A.D.3d 633 (1st Dep't 2009). Because the transactions giving rise to this action occurred outside of New York, and because most fact witnesses and documentary evidence are outside of New York's subpoena power, this Court should dismiss the nonresident plaintiffs' claims in favor of litigation in each nonresident plaintiff's home state.

### 4. This case will likely require application of myriad state law.

"[T]he need to apply foreign laws is an appropriate concern on a forum non conveniens motion." *Fox v. Fusco*, 4 A.D.3d 313, 313 (1st Dep't 2004) (affirming dismissal of case that would require the application of New Jersey law) (internal citations omitted). Litigating this case in New York would likely require the application of many different states' laws. As New York courts have recognized, "the applicable law should be that of 'the jurisdiction which, because of the relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" *Oxycontin II*, 76 A.D.3d at 1021 (quoting *In re Adoption of Doe*, 14 N.Y.3d 100, 109 (2010)); *see also Keller v. Pfizer*, 856 N.Y.S.2d 498, 2008 WL 351001, at *4 ("[I]t is likely that the substantive law of the forum where [the product] was prescribed, purchased, ingested and where the plaintiffs were harmed will be applied even if the case is tried in New York."). And, as this Court has recognized, "[a]lthough New York courts can apply foreign law, it is an undue burden to this court to apply foreign law where all of the events leading up to the

15

action took place out of state." *Wilson*, 867 N.Y.S.2d 21, 2008 WL 2468538, at *4, *aff'd*, 68 A.D.3d 633 (1st Dep't 2009).

Here, litigating in New York the claims of all the non-resident plaintiffs—which would involve application of 19 different states' laws (in addition to New York)—unduly burdens the courts of this State. Because the courts of the nonresident plaintiffs' home states are in better positions to interpret their own laws, this factor weighs in favor of dismissal.

### 5. There are adequate alternative forums.

The home states of the nonresident plaintiffs are adequate alternative forums, which also weighs in favor of *forum non conveniens* dismissal. *See Pahlavi*, 62 N.Y.2d at 479 ("Among the factors to be considered are … the unavailability of an alternative forum in which plaintiff may bring suit.") (internal citations omitted); *Marochnik v. Pfizer*, 920 N.Y.S.2d 242, 2008 WL 8177738, at *6 (Sup. Ct. N.Y. Cty. 2008) ("The presence of an alternative forum in the plaintiff's home state militates in favor of dismissal of [an] action."). It is well established that an alternative forum is adequate so long as its laws do not "deprive[]" plaintiffs of a remedy, such as by completely barring "litigation of the subject matter of the dispute." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *Shin-Etsu Chem. Co. v. ICICI Bank Ltd.*, 9 A.D.3d 171, 178-79, 777 N.Y.S.2d 69 (1st Dep't 2004). Dismissal would not prejudice Plaintiffs here, because Defendants are willing to make any New York employee who could have been subpoenaed by this Court reasonably available for trial in the plaintiff's home state (preserving all other applicable objections to such testimony) and will agree to toll the statute of limitations for the time period that an individual case was pending in New York, provided that the action was timely filed in New York state court. *See* Affirmation of Jeffrey H. Horowitz, dated January 13, 2020.

Because there is no reason that the nonresident plaintiffs cannot bring their claims in their home states, this Court should dismiss their claims in favor of litigation in those individual states.

16

## II.     The Court should sever Plaintiffs' claims under CPLR 603 to facilitate dismissal.

The Court also should sever the plaintiffs' claims to facilitate dismissal and because individualized issues predominate over common issues. Severance is appropriate if individualized issues would predominate over single issues in a single action. This litigation will raise individualized issues regarding causation, implicating different decisions among different doctors to prescribe Dilantin to different plaintiffs for different reasons. These individual issues, which would dominate, mandate severance.

**1.**     *Causation requires a fact-intensive, individualized inquiry.*   One plaintiff's experience with Dilantin is irrelevant to the claims of any other plaintiff because causation depends on the unique medical history of each individual plaintiff. *See Bender*, 93 A.D. at 748 (severing medical malpractice claims because "each treatment was separate and distinct, involving different plaintiffs, each with individual medical histories"). A jury here would have to consider each plaintiff's long and unique medical history and a host of individual factors (*e.g.*, brand of Dilantin/phenytoin used, length of use, dose used, independent risk factors, etc.), to determine both whether each plaintiff has cerebellar atrophy and whether Dilantin is the factual and legal cause of each plaintiff's alleged cerebellar atrophy. New York courts have severed claims sharing far more factual overlap than any overlap here. *See, e.g.*, *Gittino*, 301 A.D.2d at 848 (affirming severance— even though the two plaintiffs alleged that "they were injured by the same piece of medical equipment used by the same physician on the same date"—because "a joint trial could unduly prejudice defendants and lead to juror confusion" in light of the many differences between the plaintiffs); *Bender*, 93 A.D.2d at 748 ("Although … each plaintiff underwent the same implantation process and was allegedly subject to the same basic type of malpractice, clearly, each treatment was separate and distinct, involving different plaintiffs, each with individual medical histories.").

17

Under these circumstances, consolidation is inappropriate and severance is warranted to the risk of confusing the jury as to which facts apply to which plaintiff—indeed, New York courts routinely order severance on this basis. *See Bender*, 93 A.D.2d at 748; *see also, e.g.*, *Poole v. Allstate Ins. Co.*, 20 A.D.3d 518, 519 (2d Dep't 2005) (reversing denial of motion to sever because plaintiffs "suffered diverse injuries and required different medical treatment," and "a single trial of all the claims would prove unwieldy and confuse the trier of fact"); *Radiology Res. Network, P.C. v. Fireman's Fund Ins. Co.*, 12 A.D.3d 185, 185 (1st Dep't 2004) (upholding severance because claims arose from "different accidents" and each claim raised "unique legal and factual issues"); *Abbondandolo*, 282 A.D.2d at 225 (upholding severance of 65 claims because "individuals issues predominate, concerning particular circumstances applicable to each plaintiff so as to preclude the direction of a joint trial"); *Reid v. Haher*, 88 A.D.2d 873, 873–74 (1st Dep't 1982) (reversing denial of severance when complaint asserted "separate malpractice actions arising out of unrelated transactions and involving different plaintiffs" because severance would "avoid prejudice").

**2.** *The prescribing decisions of each plaintiff's physician present individualized issues.* Even if Plaintiffs could establish that the warnings accompanying Dilantin were inadequate (and they cannot), they still must show that their individual physicians would not have prescribed the medication if they had known the information that Plaintiffs claim was withheld from the warning label. *See Mulhall v. Hannafin*, 45 A.D.3d 55, 61 (1st Dep't 2007) ("Under well settled law, to prove proximate cause, a plaintiff has the obligation to adduce proof that had a warning been provided, she would have read the warning and heeded it."); *Alston v. Caraco Pharm., Inc.*, 670 F. Supp. 2d 279, 285 (S.D.N.Y. 2009) ("In the case of prescription medications, where warnings are directed to prescribing physicians, a plaintiff must demonstrate that had a different,

18

more accurate warning[] been given, his physician would not have prescribed the drug in the same manner."); *see also McDonnell v. Chelsea Mfrs., Inc.*, 259 A.D.2d 674, 676 (2d Dep't 1999) (explaining that the pharmaceutical manufacturer's duty "may be fulfilled by giving detailed, adequate warnings to the prescribing physician, who acts as an 'informed intermediary' between the manufacturer and a patient").  Here, each plaintiff's prescribing physician made a complex decision whether to prescribe Dilantin based on numerous sources of information and each patient's particularized medical conditions.  Accordingly, permitting this litigation to go forward as a single case with a single, consolidated trial (or even several consolidated, multi-plaintiff trials) would require a single jury to consider *dozens* of different, yet equally complex, prescribing decisions.  That would be unwieldy and inappropriate—these are intensely fact-specific, individualized issues not amenable to consolidation, and severance is appropriate.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court sever the claims of all plaintiffs and dismiss the claims of the 35 nonresident plaintiffs who have no relevant connection to New York under the doctrine of *forum non conveniens*.[7]  As explained above, Defendants are willing to stipulate to have New York-based witnesses appear for trial in the plaintiffs' home jurisdictions and will agree to toll the statute of limitations for the period in which this action was pending in New York state court, provided the action was timely as of the time

---

[7] For clarity, those plaintiffs are Adams, Baughman, Bickner, Brend, Canady, Coppla, Cram, Dean, DeLumeau, Denucci, Eick, Farley, Goldsmith, Goode, Hart, Hoffman, Horton, Kusik, MacKenzie, Mason, Musser, Penrod, Pinnix, Poley, Pruitte, Ray, Rhoades, Rosado-Cabrera, Seidenstein, Serrano, Smith, Steele, Ward, Joyce Williams, and Kenyhan Williams.

19

Case MDL No. 3140 Document 79-2 Filed 12/30/24 Page 21 of 21

filed in New York state court, as to any dismissed plaintiff who re-files in their home state within 60 days of entry of an order of dismissal by this Court.

Dated: New York, New York
January 13, 2020

ARNOLD & PORTER KAYE SCHOLER LLP

By:   /s/ Jeffrey H. Horowitz
Jeffrey H. Horowitz
Alan E. Rothman
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Fax: (212) 836-8689

*Attorneys for Defendants*
*Pfizer Inc., Pharmacia LLC f/k/a Pharmacia*
*Corporation, Parke, Davis & Company LLC*
*as successor-in-interest of Parke, Davis &*
*Company, and Warner-Lambert Company*
*LLC f/k/a Warner-Lambert Company*

20