BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: DEPO-PROVERA
(DEPOT MEDROXYPROGESTERONE ACETATE)      MDL No. 3140
PRODUCTS LIABILITY LITIGATION

**This Document Relates to:**
*Daniels v. Pfizer Inc., et al.*, Southern District of Illinois, Cause No. 3:25-cv-00188-NJR

### BRIEF IN SUPPORT OF MOTION TO VACATE
### CONDITIONAL TRANSFER ORDER 2

Plaintiff moves this Panel to vacate Conditional Transfer Order 2 ("CTO-2"), issued in *Daniels v. Pfizer Inc., et al.*, No. 3:25-cv-00188, pending in the Southern District of Illinois, which conditionally transferred this action to MDL No. 3140: *In Re: Depo-Provera (Depot Medroxyprogesterone Acetate) Products Liability Litigation*. For the reasons below, Plaintiff requests this Panel vacate CTO-2.

### BACKGROUND

Plaintiff, an Illinois citizen, developed multiple intracranial meningioma as a result of the use of depot medroxyprogesterone acetate ("DMPA"), with the brand name Depo-Provera, an injectable contraceptive product manufactured, marketed, and sold by Defendants. (Compl. ¶¶ 1, 3, 99-106, *Daniels v. Pfizer Inc., et al.*, No. 25-cv-00188, (S.D. Ill. Feb. 7, 2025), ECF No. 1-1,[1] attached as Ex. 1.) One of those defendants, Walgreens, is also a citizen of Illinois. No party disputes that both Plaintiff and Walgreens are citizens of Illinois. Because Walgreens is an Illinois citizen, the forum defendant rule prohibits removal. Furthermore, centuries old precedent mandates that there is no diversity jurisdiction when there is no complete diversity. *Strawbridge*

---

[1] Except where indicated, all references to the docket refer to the docket in *Daniels v. Pfizer Inc., et al.*, No. 25-cv-00188, (S.D. Ill. Feb. 7, 2025).

*v. Curtiss*, 7 U.S. 267, 267 (1806), *overruled on other grounds by Louisville, C. & C.R. Co. v. Letson*, 43 U.S. 497 (1844). Yet, Greenstone LLC and Viatris Inc. (together, "Removing Defendants") removed this case to federal court on the sole basis that diversity exists. The other non-Walgreens defendants consented to the removal. (Exs. B-C of Notice of Removal ("NOR"), ECF No. 1-2, 1-3, attached as Ex. 2.)

Defendants' only legal argument in support of jurisdiction is so-called "fraudulent joinder," under which a defendant against whom a plaintiff *could not possibly* recover can be disregarded. But here, Plaintiff seeks recovery for damages sustained because of Defendants' negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, labeling, packaging, promoting, marketing, distribution, and sale of DMPA. Plaintiff's claims are based on viable state law theories of liability, with causes of action for failure to warn, design defect, negligence, fraudulent misrepresentation, and negligent misrepresentation. And, since filing her complaint in Illinois state court on December 31, 2024, Plaintiff has diligently litigated her case and served each defendant, including Walgreens.

Defendants do not actually believe there is federal jurisdiction or that removal was proper. The real reason Defendants removed this suit is not to keep it in federal court, for there simply is no jurisdiction. Rather, the motivating rationale is to slow down the administration of justice for as long as possible. That cynical procedural gamesmanship is untoward even in normal circumstance; it is particularly troubling here, where Plaintiff's allegations—that the DMPA made and sold by Defendants caused Plaintiff to develop a brain tumor, and that Walgreens sold the defective product to Plaintiff without warning of the risks—stem from life-altering brain surgery, radiotherapy treatments, and an additional eye surgery with life-long health impacts.

Immediately after removing, Removing Defendants moved to stay proceedings in the district court, hoping that such delay would allow them to tag and have the case shipped off to the MDL, guaranteeing even further delay. (Mot. to Stay Proceedings, ECF No. 3, attached as Ex. 3.) On February 9, 2025, Plaintiff filed an emergency motion to remand in the district court. (Pl.'s Em. Mot. to Remand, ECF No. 6, attached as Ex. 4.) Briefing will be complete on the motion to remand by the end of March. (Ord. (Feb. 11, 2025), ECF No. 23, attached as Ex. 5.) On February 12, 2025—a mere two days before the deadline to respond to the complaint—several defendants[2] filed a motion for extension of time to respond to the complaint, (Mot. for Extension of Time to Answer, ECF No. 24, attached as Ex. 7), which the district court granted in part, extending the time to answer by 60 days but "declin[ing] to wait until a decision is made by the [JPML] as to transfer of this case to the newly formed [MDL]." (Ord. (Feb. 14, 2025), ECF No. 28, attached as Ex. 8.) Briefing on any motion to dismiss Plaintiff's complaint will likely be complete by the end of April.

The Panel issued CTO-2 on February 14, 2025. (CTO-2, ECF No. 127, MDL No. 3140, attached as Ex. 9.) On February 21, 2025, Plaintiff filed a Notice of Opposition to CTO-2. (Notice of Opposition, ECF No. 139, MDL No. 3140, attached as Ex. 10.) For the reasons herein below, Plaintiff requests that the Panel vacate CTO-2.

**ARGUMENT & AUTHORITIES**

To avoid giving Defendants the unnecessary delay they seek through baseless procedural filings, this Panel should let the Illinois federal district court resolve the remand issue. The motion to remand should be decided prior to transfer to avoid undue delay and prejudice to Plaintiff, and

---

[2] Walgreens filed a motion for extension of time on February 14, 2025, the day its response was due. (Mot. for Extension of Time, ECF No. 29, attached as Ex. 6.)

3

this action is not properly transferrable to the MDL in any case. Once before the Illinois district court, this case will be remanded for prompt adjudication in the proper state forum.

I.  **PLAINTIFF'S EMERGENCY MOTION TO REMAND SHOULD BE DECIDED PRIOR TO THE TRANSFER OF THIS ACTION.**

"[T]he first and fundamental question is that of jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)). "Without jurisdiction [a] court cannot proceed at all in any case." *Id.* (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* (internal quotations omitted). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "It is presumed that a cause lies outside [federal courts'] limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* Therefore, the Supreme Court has required that jurisdiction be established as a threshold matter. *See Steel Co.*, 523 U.S. at 94-95.

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* at 94. Either a court has jurisdiction, or it does not, and, therefore, a court has the power to preside over a case or it does not. *See id.* This applies to MDL proceedings. It cannot be reasonably disputed that a transfer to an MDL proceeding is a judicial act that greatly impacts Plaintiff's ability to proceed with this case. Consistent with *Steel Co.*, this is not an act that should be effectuated by a court that lacks jurisdiction. Further, this is an Illinois case, and the Southern District of Illinois is therefore best positioned to make this determination.

4

The Rules of the Judicial Panel on Multidistrict Litigation acknowledge that the district court may rule on the lack of diversity jurisdiction for this case. JPML R. 2.1(d) ("Pendency of Motion or Conditional Order. The pendency of a motion . . . does not affect or suspend . . . pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court."). There is no reason to send this case to the nascent MDL to rule on its lack of diversity jurisdiction when the district court can do so now and when doing so effectively grants Defendants the very delay that they seek, even though grounds for removal were specious at best. Letting the district court exercise its own authority and conclude that there is no diversity jurisdiction for this case avoids the unnecessary delay that Defendants here seek.

## II.     THIS ACTION IS NOT PROPERLY TRANSFERRABLE TO THE MDL.

To be transferred to the MDL, (1) the action must involve one or more common questions of fact with the consolidated actions; (2) the transfer of the action must be for the convenience of parties and witnesses; and (3) the transfer of the action must promote the just and efficient conduct of such actions. 28 U.S.C.A. §1407(a). This action may involve common questions of fact with the consolidated actions, but that factor, standing alone, is not sufficient to warrant transfer. And here, convenience and efficiency require that jurisdiction be resolved by the district court prior to transfer.

### A.     Convenience Requires Jurisdiction Be Resolved Prior to Transfer.

Plaintiff is a 50-year-old woman who, because of her DMPA use, has undergone brain surgery, radiotherapy, eye surgery, and lives with the residual effects and fallout every day. What is particularly cynical about Removing Defendants' attempt here to introduce delay—first by removing on the baseless ground of fraudulent joinder, then asking the district court to stay the case and immediately asking this tribunal to send the case to the MDL—is that the unnecessary

5

delay would inconvenience an individual who has already gone through so much. The district court is not only a proper forum; it is *the* proper forum to determine subject-matter jurisdiction.

On the contrary, the only convenience created by stripping the district court of the jurisdiction determination and sending these cases to the MDL is that Defendants get the delay they wryly sought when seeking removal in the first place. It is certainly not more convenient for Plaintiff or Walgreens, both Illinois citizens, to have issues decided on a delayed basis in a far-away MDL that has no particular expertise on the Illinois claims at issue.

      **B.**      **Efficiency Requires Jurisdiction to Be Resolved Prior to Transfer.**

Addressing remand issues prior to transfer by the Panel is a more efficient use of judicial resources than handing it off to the transferee court. *See, e.g.*, *T.F. ex rel. Foster v. Pfizer, Inc.*, 2012 WL 3000229, at *1 (E.D. Mo. July 23, 2012); *Hilbert v. Aeroquip, Inc.*, 486 F. Supp. 2d 135, 142 (D. Mass. 2007); *Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1189 (N.D. Cal. 1997); *see also Nauheim v. Interpublic Group of Cos.*, 2003 WL 1888843, at *2 (N.D. Ill. Apr. 16, 2003) (deciding remand before transfer because "[j]udicial economy . . . drives our decision to first examine Plaintiff's motion to remand because that examination may, as Plaintiff suggests, be dispositive as to both motions"). The most efficient and just resolution of Plaintiff's action requires the issue of remand to be determined immediately by the district court, under controlling circuit precedent. If federal jurisdiction is lacking, the time Plaintiff spends in the MDL awaiting a hearing on her motion to remand will have been needlessly wasted. Justice demands that Plaintiff's claims be heard in as timely a manner as possible.

Furthermore, Plaintiff filed her case in Illinois state court. If there is federal jurisdiction—which there is not—it must be decided by a district court in Illinois, under Seventh Circuit precedent, the only court to where Plaintiff's case may be properly removed. Even if the case is

transferred to the MDL for pre-trial proceedings, the case will ultimately be remanded back to the Illinois federal court. And if there is any difference in how the circuits interpret the relevant jurisdictional questions, there is a significant risk of wasting judicial resources.

Here, for example, Defendants rely on fraudulent joinder, which "is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Because the doctrine is judicially created, it is plausible, and in fact likely, that in some cases the Seventh Circuit and Eleventh Circuit may have different standards. *See, e.g.*, *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 850-51 (S.D. Ill. 2006) (discussing and then rejecting the Eleventh Circuit's finding of a "third form of fraudulent joinder in addition to the two that currently are recognized in this Circuit"). If the Eleventh Circuit, where Defendants seek to transfer Plaintiff's case, is more lenient and finds fraudulent joinder allowing the court to disregard Walgreens's citizenship, the case may proceed for a long time on the merits. But once the case is remanded to the Seventh Circuit, the district court there will be obligated to consider its jurisdiction sua sponte under Seventh Circuit law. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited."). And "[m]any months [or years] of work on the part of the attorneys and the court may be wasted." *Id.* The risk of disparate jurisdictional standards means the Panel should allow the transferor courts to address jurisdiction, because they ultimately will have to address it anyhow under the relevant, governing circuit precedent.

The just and efficient resolution of this action is not furthered by the transferee court resolving case-specific jurisdictional issues that can and should be resolved prior to any transfer. The relevant question is whether removal was proper, and Illinois federal judges are well-equipped

to answer that question. The transfer of this action would in no way promote, and in fact would hinder, the just and efficient resolution of this action.

**III. REMAND IS PROPER BECAUSE REMOVING DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW REMAND WAS PROPER OR FRAUDULENT JOINDER.**

The Panel should allow the Illinois district court to remand this case to Illinois state court, for courts must remand cases that are improperly removed. 28 U.S.C. § 1447(c). The removal statute is strictly construed and "restrict[s] the jurisdiction of the federal courts on removal." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *see also Morris v. Nuzzo*, 718 F.3d 660, 670 (7th Cir. 2013) (there is "long-established precedent that the removal statutes are to be strictly construed to preserve the limited jurisdiction of federal courts"); *Glein v. Boeing Co.*, 2011 WL 537987, at *1 (S.D. Ill. Feb. 8, 2011). Because Walgreens is an Illinois citizen, the forum defendant rule prohibits removal, and its citizenship cannot simply be disregarded. And, because Plaintiff and Walgreens are both from Illinois, there is no diversity; Defendants cannot show that Plaintiff could not possibly recover against Walgreens. As such, the district court will be compelled to remand this case after this Panel vacates CTO-2.

**A. The Forum Defendant Rule Prohibits Removal Because Walgreens Is A Citizen of Illinois.**

"A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title ***may not be removed*** if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). While a court may sometimes rely on the so-called "fraudulent joinder doctrine" to disregard a fraudulently joined defendant, that rule "does not permit a court to disregard the citizenship of a defendant for purposes of avoiding the forum defendant rule." *Davenport v. Toyota Motor Sales*, 2009 WL 4923994, at *3 (S.D. Ill. Dec. 14, 2009). The Seventh

8

Circuit has never found that fraudulent joinder applies to defeat the forum defendant rule and has cautioned against "a nontrivial expansion of the removal right." *Morris*, 718 F.3d at 668 (discussing whether to extend the doctrine to a diverse forum defendant but not deciding because it was not properly addressed below). Because Walgreens is a citizen of Illinois, who was properly joined and served, the forum defendant rule applies and bars removal, regardless of whether diversity jurisdiction might otherwise exist. *Davenport*, 2009 WL 4923994, at *3.

**B.    There is No Diversity Jurisdiction Because Walgreens Is a Properly Joined Defendant.**

Plaintiff and Walgreens are both citizens of Illinois; there is no diversity jurisdiction. A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder, as Removing Defendants do here, bears a heavy burden to establish fraudulent joinder. *Schur*, 577 F.3d 752, 764 (7th Cir. 2009). "The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos v. Naas Foods, Inc*, 959 F.2d 69, 73 (7th Cir. 1992) (internal citation omitted).

The burden is all the heavier because Defendants must come forward with "affirmative proof of fraudulent joinder [that] must be clear and convincing." *Robinson v. Ortho-McNeil Pharm., Inc.*, 533 F. Supp. 2d 838, 844 (S.D. Ill. 2008). Defendants' "burden of proof to produce clear and convincing evidence of fraudulent joinder . . . is not met by pointing to supposed defects in Plaintiffs' pleading of their claims against the diversity-defeating Defendant." *Hardaway v. Merck & Co.*, 2006 WL 2349965, at *2 (S.D. Ill. Aug. 11, 2006). Defendants must affirmatively show that the defect identified *could not be cured* by repleading. *Korein Tillery, LLC v. Advanced Analytical Consulting Grp., Inc.*, 2017 WL 4005926, at *4 (S.D. Ill. Sept. 12, 2017).

9

"Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Rutherford*, 428 F. Supp. 2d at 846 (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). Here, Plaintiff chose Illinois state court. Defendants have not met their "heavy burden" to prove fraudulent joinder because (1) Walgreens is strictly liable for Plaintiff's injuries and had a duty to warn Plaintiff that is not excused by the learned intermediary defense, (2) Walgreens had a special duty to warn Plaintiff or her physician because she was susceptible to DMPA, and (3) learned intermediary is common to non-diverse defendants.

### 1. Walgreens Is Liable for Plaintiff's Injuries and Not Excused by the Learned Intermediary Doctrine.

Illinois has adopted § 402A of the Restatement (Second) of Torts, which subjects manufacturers and sellers of a product to strict liability for product defects. *Lamkin v. Tower*, 563 N.E.2d 449, 457 (Ill. 1990). Under strict products liability, "each of the defendants in the product's chain of distribution may be held jointly and severally liable, ***regardless of its actual culpability in causing the injury***." *Cassidy v. China Vitamins, LLC*, 120 N.E.3d 959, 968 (Ill. 2018) (emphasis added). This includes "**all persons in the distributive chain** . . . including suppliers, distributors, wholesalers and retailers." *Hammond v. N. Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983) (emphasis added). Crucially, Illinois has consistently held that even sellers who do not create the defect are liable for harms caused by defective products because, as between the seller and the injured plaintiff, the seller is in the best position to prevent a defective product from entering the stream of commerce, may adopt inspection procedures, and is more able to distribute losses resulting from defective products. *Cassidy*, 120 N.E.3d at 968.

As a seller of Plaintiff's Depo-Provera, Walgreens is strictly liable for Plaintiff's injuries. And even if Walgreens may ultimately avoid liability, it is a properly joined defendant today, and there is no diversity jurisdiction.

### a) Walgreens Is Liable for Plaintiff's Injuries Stemming from a Defective Product.

"A seller who places his product in the stream of commerce has a non-delegable duty to make sure his product is reasonably safe." *Malone v. BIC Corp.*, 789 F. Supp. 939, 941 (N.D. Ill. 1992) (citing *Doser v. Savage Mfg. & Sales, Inc.*, 568 N.E.2d 814, 819 (Ill. 1990)). A plaintiff may prove a product was defectively designed by showing either that the product fails the consumer-expectation test, or by showing that the risk of danger inherent in the product outweighs its benefits. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 254-56 (Ill. 2007).

The consumer-expectations test requires a plaintiff to prove that "the product failed to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* at 256. Here, Ms. Daniels alleges just that, (*see generally* Compl. ¶¶ 156-77): Ms. Daniels used Depo-Provera for contraception (in an intended or reasonably foreseeable manner), (*id.* ¶¶ 94-97, 111-12); the Depo-Provera sold by Walgreens to her was defective, unreasonably dangerous, and unaccompanied by proper and adequate warnings regarding all possible adverse side effects associated with its use, (*id.* ¶¶ 157, 159-66); the use of Depo-Provera caused unreasonable and dangerous side effects, (*e.g.*, *id.* ¶ 159), in that it caused her meningioma and related sequela, (*id.* ¶¶ 98-110, 116); and thus, the product failed to perform as an ordinary consumer would expect, (*id.* ¶ 164, 167, 169).

Under the risk-utility test, a plaintiff must show that the "magnitude of the danger outweighs the utility of the product, as designed." *Calles*, 864 N.E.2d at 259. Again, Plaintiff easily meets this hurdle, especially on a motion to remand where the facts and law are construed in her favor, and even more favorably than a Rule 12(b)(6) motion. (*See* Compl. ¶¶ 167-68, 170-72). Walgreens is therefore strictly liable for Plaintiff's injuries.

11

### b) Even if Walgreens Ultimately Avoids Liability, It Is a Proper Defendant That Was Not Fraudulently Joined.

To ameliorate any potential harsh effects of strict product liability on some of the less culpable entities, Illinois also recognizes a limited distribution of liability. The "seller's exception," 735 ILCS 5/2-621, for example, allows a seller to seek dismissal from a complaint if it has certified that the manufacturer has been correctly identified. But dismissals under 735 ILCS 5/2-621 are provisional, not final: a "plaintiff could move to reinstate it later in the proceedings." *Benson v. Unilever U.S., Inc.*, 884 F. Supp. 2d 708, 716 (S.D. Ill. 2012) (granting remand). As such, dismissals under section 2-621 are not grounds for removal based on fraudulent joinder. *See, e.g.*, *LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1050-52 (S.D. Ill. 2006). An important part of Illinois's balanced system is the back-end ability to reinstate retailers if other defendants become unavailable. 735 ILCS 5/2-621(b)(1)-(4). If a case were removed based on the seller's exception, the plaintiff *would not* be able to "reinstate" the seller, because doing so would destroy the court's subject matter jurisdiction. That would leave a plaintiff with no avenue for redress and would be in direct conflict with the fundamental purposes of strict liability law. *See Cassidy*, 120 N.E.3d at 968-69.

For prescription drugs, Illinois also recognizes a limited exception in the learned intermediary defense, whereby "manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients." *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 392-93 (Ill. 1987). Prescription drugs are likely to be "complex medicines" that require considering the propensities of the drug as well as the special circumstances of the patient. *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1126 (Ill. 2002). As such, courts reason, it makes sense that the manufacturer's warnings flow through

the plaintiff's physician. *Id.* Therefore, when the manufacturer of a prescription drug provides sufficient warnings to a plaintiff's prescribing physician, the "learned intermediary" doctrine relieves "the manufacturer and others in the drug's chain of distribution, such as pharmacists," from liability. *Smith v. Merk & Co., Inc.*, 472 F. Supp. 2d 1096, 1098 (S.D. Ill. 2007).

But this exception is narrow. There can only be a "learned intermediary" defense if there is a learned intermediary. When a manufacturer does not warn the medical community about a product's risks, the manufacturer "cannot evade its responsibilities" by hoping "that the doctors will learn of the dangers themselves." *Proctor v. Davis*, 682 N.E.2d. 1203, 1213 (Ill. App. Ct. 1997). "Doctors who have not been sufficiently warned of the harmful effects of a drug cannot be considered 'learned intermediaries' and the adequacy of warnings is a question of fact, not law, for the jury to determine . . . ." *Id.* at 1215; *see also Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 43 (Ill. 2002) (approving *Proctor*). In other words, when the warning is inadequate and the risk not widely known in the medical community, the learned intermediary provides no defense to shield the manufacturer from liability. *See Sellers v. Boehringer Ingelheim Pharms., Inc.*, 881 F. Supp. 2d 992, 1006 (S.D. Ill. 2012). And if the defense is not available to the manufacturer, it likewise cannot be used by a pharmacy, who has its own independent liability under the product liability laws. *See Rutherford*, 428 F. Supp. 2d at 848-49.

To hold that the learned intermediary defense is available to relieve non-manufacturers at the pleading stage, even when there is no learned intermediary, would effectively cut off liability at the manufacturer. And if that manufacturer were unavailable or unable to satisfy any judgment, a plaintiff would have no recourse. This is not permitted under Illinois's strict liability regime. Here, Plaintiff Daniels alleges that Defendants knew or should have known that Depo-Provera could cause the development of or substantially contribute to the growth of meningioma. (*E.g.*,

13

Compl. ¶¶ 43, 56, 57, 73, 74.) Yet, Defendants never warned Plaintiff, other users of Depo-Provera, Plaintiff's physician, or the medical community about those risks. (*Id.* ¶¶ 58-61, 69, 72.) Instead, Defendants actively concealed from Plaintiff's physicians and the medical community, generally, the true risks associated with Depo-Provera, and those healthcare providers were unaware and could not have learned through reasonable diligence about those risks. (*See, e.g.*, *id.* ¶¶ 113-14.) Plaintiff's physicians were not learned intermediaries.

Plaintiff Daniels used Depo-Provera for over thirty years and never received a warning that Depo-Provera could be the cause of her meningioma.[3] (Compl. ¶¶ 72, 94, 113-14.) Defendants, including Walgreens, continued to sell the inherently dangerous drug. (*Id.* ¶¶ 58, 60.) Even after Ms. Daniels suffered through a 12-hour surgery and countless hours of radiation to remove part of her meningiomas, her doctors continued to prescribe, and Walgreens continued to sell DMPA to Ms. Daniels. (*Id.* ¶¶ 102, 108.) It is irrelevant that Walgreens had no role in the design, development, manufacturing, or label of Depo-Provera, or that it did not hold the NDA, (NOR ¶¶ 36-38); as a participant in the stream of commerce, Walgreens is strictly liable just like every other entity in the distributive chain, *Cassidy*, 120 N.E.3d at 968; *Hammond*, 454 N.E.2d at 216-17. If a court later determines that sufficient warnings were provided to Plaintiff's prescribing physician, the "learned intermediary" doctrine may then relieve Walgreens, and all Defendants, from liability. That is a merits question, not a basis for finding diversity jurisdiction on the pleadings.

---

[3] Plaintiff inadvertently omitted an allegation that she used Depo-Provera from 1992 until 2024. This pleading deficiency is not enough to show that Plaintiff's has no cause of action against Walgreens. *See Korein Tillery, LLC*, 2017 WL 4005926, at *4 ("While removing Defendants' argument may be enough to support dismissal of the complaint—without prejudice and with leave to replead—this pleading shortcoming does not show by clear and convincing evidence that Korein Tillery cannot establish a fraud cause of action against Girnius. Indeed, that is why a court is likely to allow Korein Tillery leave to replead claims against Girnius.").

c) **Walgreens Had a Duty to Warn Plaintiff's Physician.**

Furthermore, Walgreens had an independent duty to warn Plaintiff's physician. "[M]anufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients." *Happel*, 766 N.E.2d at 1126 (quoting *Kirk*, 513 N.E.2d at 392). In *Happel*, the Illinois Supreme Court explicitly held that pharmacies too are held to the same standard; as such, pharmacies have no duty to warn *customers* about the dangers of prescription drugs. *Id.*; *see also Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011) (discussing the pharmacy's duty to warn a customer). But that does not relieve the pharmacy of any duty to warn the prescribing *physician*. And here, Walgreens had such a duty.

Depo-Provera is available by prescription only and is typically administered in the doctor's office. (Compl., Factual Allegations ¶ 7.) When a pharmacy sells the drug to the patient, the patient first gets the prescription from her doctor, picks it up from the pharmacy, and then returns to her doctor to have the drug administered. (*Id.*) Here, that is exactly what happened: Plaintiff Daniels purchased the prescription from Walgreens and then took that prescription back to her doctor to be injected. As such, Walgreens, just like the manufacturer, could have, and *should have*, warned Plaintiff's physicians yet failed to do so. (*Id.* ¶¶ 43, 57.) This too compels remand.

2. **Walgreens Knew or Should Have Known That Plaintiff Was Susceptible to Depo-Provera and Had a Duty to Warn Plaintiff or Her Physician.**

Even if a learned intermediary existed in this case to shift the duties owed by Defendants, "the scope of the protection provided to pharmacists by the learned intermediary doctrine is limited." *Happel*, 766 N.E.2d at 1128. In *Happel*, the Illinois Supreme Court recognized that "special circumstances" could justify imposing a duty to warn on pharmacists even with a learned

15

intermediary. For example, when a pharmacy knows a prescribed medication is contraindicated for the plaintiff, the pharmacy has an independent duty to warn. *Id.* at 1129. The Seventh Circuit likewise recognizes a variation of this exception:

> What a pharmacy sometimes knows, however, without investigation, and the manufacturer will not know and even a treating physician may not know, is susceptibilities of particular customers of the pharmacy to the side effects of a drug that it sells them—susceptibilies because of other drugs that the pharmacy knows the customer is taking, or a pre-existing physical or mental condition (again known to it) that makes the drug contraindicated for the customer—and then it must warn either the customer or his physician.

*Walton*, 643 F.3d at 1000. Additionally, "a duty to warn, including in the pharmaceutical context, can be found where there is unequal knowledge of a dangerous condition and the defendant, possessed of that knowledge, knows or should know that harm might or could occur if no warning is given." *Urbaniak v. Am. Drug Stores, LLC*, 126 N.E.3d 561, 566 (Ill. App. Ct. 2019). To determine whether a duty exists, courts look to relevant factors, including "(1) the reasonable foreseeability that the defendant's conduct may injure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such injury, and (4) the consequences of placing that burden on the defendant." *Happel*, 766 N.E.2d at 1123-24.

Ms. Daniels began using Depo-Provera in 1992, (Compl. ¶ 94), was diagnosed with a meningioma in 2021, (*id.* ¶¶ 98-100), and had brain surgery in January 2022, (*id.* ¶ 102). Even after her surgery, Walgreens continued to sell Depo-Provera to Ms. Daniels. Ms. Daniels properly alleged that Walgreens knew or should have known about the dangers of Depo-Provera. (*E.g.*, *id.* ¶¶ 43, 56-67.) Furthermore, Walgreens knew that Depo-Provera should be discontinued to slow or stop the growth of a meningioma. (*Id.* ¶ 123.) Given that Ms. Daniels underwent surgery and radiation in 2022, and was prescribed dozens of related medications that would have been in her pharmaceutical file, it is plausible that Walgreens should have known about Ms. Daniels's "special

16

circumstances" and had a duty to warn of the specific risks.[4] Yet Walgreens provided no warning. Not to Plaintiff and not to her providers, who would have seen and heeded such a warning, (*id.* ¶¶ 143, 188, 203, 227), especially in this case, where Walgreens sold the product to Plaintiff who then took it back to her physician for the physician to administer the product.

Given Walgreens's position as a seller in the chain of commerce, and its knowledge about DMPA and Ms. Daniels's specific risks, it was foreseeable that Walgreens's failure to provide proper warnings to Plaintiff or her physician would result in a likely injury to Plaintiff. Furthermore, the burden on Walgreens of imposing this duty is minimal: the pharmacist could have added a label to the packaging that the physician would have seen before administering the DMPA or could have picked up the phone. Walgreens would suffer no greater consequence from imposing a duty here than what Illinois already subjects sellers to under its product liability regime.

### 3. Learned Intermediary Is Common to Non-Diverse Defendants.

Independently, Defendants' arguments fail to show fraudulent joinder because they are not really about *joinder*, but about the core of the action itself. The Seventh Circuit has explained:

> [A] plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is **no weaker than** his claim against the diverse defendants. Especially if the claims are identical, the diverse defendants **really are just arguing that the suit has no merit**, period. And that is a ground not for removal but for asking the court in which the suit was filed—the state court—to dismiss the suit.

*Walton*, 643 F.3d at 1001 (emphasis added).

---

[4] To the extent that Plaintiff failed to plead facts necessary to show or raise an issue of fact as to whether Walgreens had notice of Plaintiffs "special circumstances," such failure can be cured by repleading and thus is not proper for a finding a fraudulent joinder. *See Korein Tillery, LLC*, 2017 WL 4005926, at *4.

With respect to learned intermediary, Plaintiff's claims against Walgreens are no weaker than her claims against other diverse non-Pfizer Defendants. The "learned-intermediary doctrine doesn't permit distributors to *conceal* a drug's adverse side effects from physicians, pharmacies, and consumers." *Id.* Nor would it permit sellers to conceal a drug's adverse side effects from a plaintiff's physician. Under such circumstances, the defense does not apply to *any* defendant. *Supra* Section III(B)(1).

But when it does apply, "the learned intermediary doctrine is fundamentally a device for shifting liability for harm caused by a product, such as a prescription drug, onto doctors and away from others in the product's chain of distribution." *Brooks v. Merck & Co., Inc.*, 443 F. Supp. 2d 994, 999 (S.D. Ill. 2006). And it "applies exactly the same way as between both [the other manufacturers and distributors] and Walgreens." *Id.* at 1003. If the court ultimately finds that the manufacturer properly warned the physicians, then the manufacturer, the distributors, *and* Walgreens will be absolved of liability. Even if the manufacturer were held to a higher standard as the ultimate concealer, under Defendants' reading, Plaintiff's "allegations relate primarily to the conduct of Pfizer, the brand manufacturer and NDA holder." (NOR ¶ 38.) The claims against Greenstone, Viatris, Prasco, and Pharmacia LLC would all fail on the same grounds as Walgreens if learned intermediary were a bar here.

In short, to deny remand, a federal court would need to rule that the bulk of the allegations are frivolous as to nearly every defendant and that most defendants, not merely the Illinois resident, were fraudulently joined. *See McNary v. Cottrell, Inc.*, 2009 WL 5066650, at *4 (S.D. Ill. Dec. 17, 2009) (because *two* defendants "share a common defense," the case must be remanded; "[t]hat other Defendants . . . do not share this defense is irrelevant to the Court's determination of whether it possesses jurisdiction over this action"). Because "the learned intermediary doctrine clearly is

an issue that goes not to the Court's jurisdiction but to the merits of Plaintiff's claims for relief," *Brooks*, 443 F. Supp. 2d at 1003, Defendants' removal attempt must fail. *See also Robinson*, 533 F. Supp. 2d at 842.

## CONCLUSION & PRAYER

For the foregoing reasons, 28 U.S.C.A. §1407 mandates this action remain in the Southern District of Illinois until such time as the district court resolves the pending jurisdictional issue. Accordingly, Plaintiff respectfully requests that this Panel vacate CTO-2 and grant such other relief to which Plaintiff is justly entitled.

Dated: March 7, 2025                    Respectfully submitted,

*/s/ Nicole Berg*

Nicole Berg (IL ARDC # 6305464)
ncb@kellerpostman.com
KELLER POSTMAN LLC
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5220
Facsimile: (312) 971-3502

*Attorney for Plaintiff*